# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON, | ) |
| | ) DIVISION ONE |
| Respondent, | ) |
| | ) No. 72628-5-I |
| v. | ) |
| | ) PUBLISHED OPINION |
| EURAN J. WOODS, | ) |
| | ) |
| Appellant. | ) FILED: April 3, 2017 |
| | ) |

DWYER, J. — Euran Woods appeals from the judgment entered on a jury's verdict finding him guilty of assault in the second degree pursuant to RCW 9A.36.021(1)(g), assault by strangulation. On appeal, Woods contends that the trial court erred by admitting evidence that he had previously promoted the prostitution of the victim, Brittany Englund. Woods also contends that his counsel was ineffective for failing to object to the admission of the pimping evidence and for failing to request a limiting instruction. Finding no error, we affirm.

I

Woods and Englund began their volatile relationship in 2009. At that time, Woods and Englund sold drugs together and Englund herself was addicted to drugs. As Englund's drug addiction grew, so did her dependency on Woods— who exploited this dependency to isolate Englund from her friends and family. In

addition to being emotionally abusive, Woods physically abused Englund throughout their relationship.

In 2011, Woods began forcing Englund to prostitute herself. Initially, Woods would purchase clothing for Englund and leave her on the street with instructions regarding where to locate customers and the amount of money that she should collect in exchange for various sexual activities. After Englund was abducted by one customer and forced to jump out of his moving vehicle to escape, she pleaded with Woods to let her stop. Woods then decided to market Englund by listing her on Backpage.com. Woods conditioned Englund to comply with his demands by convincing her that her life of prostitution was only temporary and that one day they would both have normal jobs and be happy together.

Englund argued with Woods regarding the prostitution several times. On one occasion in August of 2011, Woods noticed that Englund had silenced the cell phone that Woods used to take calls from men seeking to sexually exploit Englund. Woods and Englund argued and Woods strangled Englund until she passed out. Englund did not inform the police or her family of the abuse or prostitution both out of fear that Woods would retaliate and because she felt that Woods loved her and was sorry.

Woods strangled Englund again in September of 2011. On the day in question, Englund had an abortion and then returned home to be with Woods. That night, Woods left, only to return home at 3:00 a.m. accompanied by three women. Woods told Englund to stay in the bedroom. Hours later, after Woods

- 2 -

fell asleep, Englund looked at Woods' cell phone and discovered that he had been taking pictures with the women. Englund awakened Woods and confronted him about the pictures. Woods then threw Englund across the room, kicked her, stomped on her, and strangled her until she passed out. Woods later apologized to Englund, who decided to not call the police.

Englund went to her mother's house for a birthday party a few days later. Englund was anxious about her family discovering what was going on in her life and, at one point during the visit, she went upstairs and began crying. When Englund's mother went to check on her, Englund showed her mother the bruises around her neck and told her what had happened. Englund did not want to inform the police—she was in love with Woods, did not believe that he would hurt her again, and did not think that the police would believe her because of her own criminal history.

In April of 2012, Woods again assaulted Englund. Woods refused to allow Englund to leave their apartment or call for help following the assault. Three days later, Woods left the apartment and Englund was able to telephone her mother, who drove her to the hospital. Police officers interviewed Englund at the hospital. Englund disclosed the 2011 assaults for the first time during a subsequent interview with a police detective.[1]

The State charged Woods by amended information with one count of assault in the second degree for the September 2011 strangulation, with a

---

[1] The jury did not hear testimony regarding the April 2012 assault or the reason why police contacted Englund.

special allegation that the assault was committed against a family or household member—a crime of domestic violence pursuant to RCW 10.99.020. The jury found Woods guilty and the sentencing court imposed a standard-range sentence of nine months of incarceration and twelve months of community custody. Woods timely appealed.

Woods was represented by attorney Eugene Piculell at trial. After filing a notice of appeal, Mr. Piculell filed an Anders[2] brief with this court, stating than an appeal in this matter would present nothing other than legally frivolous issues. The State moved to strike the Anders brief. We directed attorney Piculell to file an answer to the State's motion. Instead, Mr. Piculell withdrew from the case. We appointed attorney James Womack to represent Woods. Mr. Womack fully briefed the case, we granted oral argument, and now resolve the issues presented.[3]

II

Woods first contends that the trial court erred by admitting evidence of Woods' past prostitution of Englund. This is so, he asserts, because the proffered testimony was not relevant and was highly prejudicial. We disagree.

We review a trial court's decision to admit evidence pursuant to ER 404(b) for abuse of discretion. State v. Fualaau, 155 Wn. App. 347, 356, 228 P.3d 771 (2010). Abuse of discretion occurs when the trial court's ruling is manifestly

---

[2] Anders v. California, 386 U.S. 738, 87 S. Ct. 1396, 18 L. Ed. 2d 493 (1967).
[3] We extend our gratitude to Mr. Womack, who handled this unusual assignment with a high degree of skill and professionalism.

- 4 -

unreasonable or based on untenable grounds or reasons. State v. Rodriquez, 187 Wn. App. 922, 939, 352 P.3d 200, review denied, 184 Wn.2d 1011 (2015).

Evidence of a defendant's prior bad act is not admissible to prove the defendant's character and to show action in conformity therewith. ER 404(b). However, such evidence may be admissible for other purposes, "depending on its relevance and the balancing of its probative value and danger of unfair prejudice." State v. Gresham, 173 Wn.2d 405, 420, 269 P.3d 207 (2012). For evidence of a prior bad act to be admissible, a trial judge must "(1) find by a preponderance of the evidence that the misconduct occurred, (2) identify the purpose for which the evidence is sought to be introduced, (3) determine whether the evidence is relevant to prove an element of the crime charged, and (4) weigh the probative value against the prejudicial effect." State v. Vy Thang, 145 Wn.2d 630, 642, 41 P.3d 1159 (2002). The trial court ordinarily should also give a limiting instruction to the jury if the evidence is admitted. State v. Gunderson, 181 Wn.2d 916, 923, 337 P.3d 1090 (2014).

Prior to trial, the State moved to admit testimony regarding Woods' prior assaults and prostitution of Englund. The State argued that these prior acts were necessary to explain to the jury why Englund was fearful of seeking help from her family or from the police. Addressing the prostitution evidence specifically, the State argued that it was important for the jury to understand that Woods had been grooming Englund for prostitution and that many of the assaults were instigated in response to Englund's attempts to stop Woods from continuing to prostitute her.

The trial court began its analysis by presuming that the evidence was inadmissible. The trial court then determined by a preponderance of the evidence that the alleged acts occurred. The trial court noted that—in matters dealing with domestic violence—testimony regarding prior assaults may assist the jury in understanding the dynamics of the domestic violence relationship and in assessing the victim's credibility.

The trial court first determined that evidence of the April 2012 assault, which resulted in Englund's hospitalization, was highly prejudicial and was not relevant to the charged conduct. This evidence was excluded. Turning to the August 2011 strangulation and the prostitution evidence, the trial court determined that such evidence was admissible because it aided the jurors in understanding the nature of the relationship, motive, and intent, and helped to illuminate the victim's state of mind.

In ruling that these prior acts were admissible, the trial court relied on our decisions in State v. Grant, 83 Wn. App. 98, 920 P.2d 609 (1996), and State v. Baker, 162 Wn. App. 468, 259 P.3d 270 (2011). In Grant, we noted that "victims of domestic violence often attempt to placate their abusers in an effort to avoid repeated violence, and often minimize the degree of violence when discussing it with others." 83 Wn. App. at 107. Such conduct by domestic violence victims tends to call into question the credibility of those victims. Accordingly, we concluded that "[t]he jury was entitled to evaluate [the victim's] credibility with full knowledge of the dynamics of a relationship marked by domestic violence and the effect such a relationship has on the victim." Grant, 83 Wn. App. at 108.

We relied on those same principles when concluding that evidence of a defendant's prior assaults was admissible in Baker. The domestic violence victim in Baker was strangled on numerous occasions but, as in this matter, did not inform the police. 162 Wn. App. at 475. We concluded that evidence of the strangulations was admissible because the jury was entitled to evaluate the credibility of the victim with "full knowledge of the dynamics of her relationship" with the defendant. Baker, 162 Wn. App. at 475.

The trial court's rulings herein were tenable. Englund's testimony as to how Woods forced her into prostitution and why she was unable to escape was necessary for the jurors to understand the dynamics of this domestic violence relationship. Woods' forced prostitution of Englund was a source of shame and fear for Englund and was an important factor in understanding why she refused to seek help from her friends, family, and the police.

Nevertheless, and for the first time on appeal, Woods contends that the prostitution evidence was unduly prejudicial because it was an appeal to racial bias. This is so, he asserts, because presenting evidence that a black male prostituted a white female plays into deep-seated racial stereotypes.

The record does not indicate the race of Englund or the jurors, whom Woods now asserts were nondiverse. Woods provides no citation to the record purporting to show an appeal to racial bias, either overt or otherwise. Moreover, Woods cites to no authority to support his contention that evidence of forced prostitution, without more, constitutes an appeal to racial bias. While the

concerns he expresses are not at all frivolous, on this record he does not establish error.

### III

Woods next contends that he received ineffective assistance of counsel. This is so, he asserts, because his counsel failed to object to the introduction of the prostitution evidence and failed to request a limiting instruction.

Constitutionally ineffective assistance of counsel is established only when the defendant shows that (1) counsel's performance, when considered in light of all the circumstances, fell below an objectively reasonable standard of performance, and (2) there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); State v. Hassan, 151 Wn. App. 209, 216-17, 211 P.3d 441 (2009). The burden is on the defendant to demonstrate deficient representation and prejudice. In re Det. of Hatfield, 191 Wn. App. 378, 401, 362 P.3d 997 (2015). Failing to satisfy either part of this analysis ends the inquiry. State v. Hendrickson, 129 Wn.2d 61, 78, 917 P.2d 563 (1996).

Woods first asserts that he received ineffective assistance of counsel because his counsel failed to object to the admission of the prostitution evidence. However, as discussed herein, there was nothing objectionable about this evidence because it was properly admitted pursuant to ER 404(b). Moreover, Woods' counsel expressly deferred an objection to the prostitution evidence after

stating that he viewed that evidence as presenting a valuable area for cross-examination.

> The Court: And did you wish to respond to the prior bad acts proffer[ed] just looking to the prostitution, pimping allegation?
> Mr. Piculell: Well, I think that if the prosecutor introduces that, there is cross-examination that may be relevant that may not be under those circumstances, so I'll defer on that issue.

"Because the presumption runs in favor of effective representation, the defendant must show in the record the absence of legitimate strategic or tactical reasons supporting the challenged conduct by counsel." State v. McFarland, 127 Wn.2d 322, 336, 899 P.2d 1251 (1995). "[T]he presumption of adequate representation is not overcome if there is any 'conceivable legitimate tactic' that can explain counsel's performance." Hatfield, 191 Wn. App. at 402 (quoting State v. Reichenbach, 153 Wn.2d 126, 130, 101 P.3d 80 (2004)). Here, Woods has not shown the absence of legitimate strategic or tactical reasons supporting his attorney's decision to not object. Rather, the record demonstrates that a tactical decision was made.

Woods also asserts that he received ineffective assistance of counsel because his attorney failed to request a limiting instruction regarding the prostitution evidence. The trial court properly provided the jury with a limiting instruction regarding the evidence of the prior assaults, but did not specifically include the prostitution evidence in that instruction. Woods' counsel did not request such an instruction.

Again, we can conceive of legitimate strategic or tactical reasons for not requesting a limiting instruction. First, inclusion of the prostitution evidence in the

limiting instruction already provided to the jury would have been misleading. Defense counsel argued to the jury that Woods did not cause Englund's injuries. Rather, he posited, those injuries could have been a result of Englund's prostitution. Thus, a theory of the case proffered by defense counsel relied on the truth of the prostitution evidence. An instruction that directs the jurors to consider that evidence only for impeachment purposes would contradict defense counsel's own argument. Second, a separate limiting instruction focused solely on the prostitution evidence could serve as an unwanted reminder of damaging testimony. See e.g., State v. Yarbrough, 151 Wn. App. 66, 90, 210 P.3d 1029 (2009) (courts may presume that counsel did not request a limiting instruction so as to avoid reemphasizing damaging evidence). Thus, deficient performance is not established.

Moreover, Woods must establish that a reasonable probability exists that, but for counsel's failure to request a limiting instruction, the result of the proceeding would have been different. Strickland, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. Woods has not done so.

The State introduced evidence of Woods' forced prostitution of Englund to assist the jury in understanding the dynamics of the relationship and to explain why Englund did not seek help from the police or from her family. The State's presentation of its case was consistent with the understanding that this evidence was admitted for only that limited purpose. Indeed, in the prosecutor's closing argument she told the jury:

Jury Instruction 4 tells you how you are to use this evidence – evidence of the August strangulation, evidence of the defendant pimping Brittany out. You can use that evidence to assess her state of mind – her credibility. In other words, you can use this evidence to understand the choices that she made. You can use it to understand the power he held over her, the power to instill fear in her, but also the power to instill hope in her. Hope that it wouldn't happen again. It is evidence of what was going through her mind when she refused to call the police – when she refused to let her mother help her.

The State's use of the prostitution evidence and explanation to the jury regarding the context in which the evidence should be viewed give rise to an inference that the jury understood this evidence in the context in which it was presented. Conversely, Woods has provided no evidence indicating that the jurors used that evidence for anything other than its intended purpose. Accordingly, Woods fails to establish prejudice.

Affirmed.

We concur:

FILED
COURT OF APPEALS DIV 1
STATE OF WASHINGTON
2017 APR -3 AM 8:39