IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 74029-6-I |
| Respondent, | ) ) | |
| | ) | DIVISION ONE |
| v. | ) ) | |
| ETON MARCEL POPE, | ) | UNPUBLISHED OPINION |
| Appellant. | ) ) | FILED: December 4, 2017 |

BECKER, J. — Appellant was convicted of rape and assault following a trial during which he represented himself. He contends his right to counsel was violated because after the State added an aggravator, the court did not reassess his desire to act pro se or consider reappointing counsel. The record does not show a violation of appellant's right to counsel. We affirm.

## FACTS

The victim, ES, testified that she met the appellant, Eton Pope, in 1993, and they dated for a brief period. In May 2013, ES and Pope ran into each other in downtown Seattle. They started dating again. As the relationship progressed, Pope began subjecting ES to verbal abuse. Sometimes he was physically aggressive towards her, especially during sex. ES remained hopeful Pope would change and the relationship could work.

On September 15, 2013, Pope and ES were together at her apartment. They got into an argument. When ES refused to "be quiet," as Pope demanded, he grabbed her by the neck, pushed her against the wall, and choked her. He eventually let go. During a later conversation, Pope again demanded that ES "be quiet." She refused. Pope sat down on the couch next to ES and choked her until she fainted. When ES regained consciousness, Pope was moving her from the couch to the floor. She testified that Pope then raped her:

> He sat me on the floor, and then what he did, he—somehow I was—I was—had my robe on. It was a gray, terry cloth robe, and he—somehow—I don't know where the belt was. I don't know if it came out of the—out of the belt loops or not, but somehow he got the belt loop, and he wrapped it around my mouth, and at that point I knew something wasn't right. I knew this wasn't right.
> He put that belt loop around my mouth. He just wrapped it. And I started shaking my head, because I knew that wasn't right. Whatever was getting ready to happen, I knew it wasn't right.
> . . . .
> . . . And he laid me down. He laid me down, and then he held—with his left hand he held my hands above my head, and then he raped me.

ES did not call the police that day.

Pope and ES did not see each other until the end of October, at which point they agreed to get back together. Pope soon resumed his verbal abuse of ES. They broke up around October 22, 2013. On October 23, ES called the police and reported the rape that occurred on September 15.

Pope was charged with one count of second degree assault by strangulation and one count of second degree rape. Both offenses were alleged to be crimes of domestic violence. The State later amended the charge by

adding an aggravator for a history of domestic violence over a prolonged period of time, based on Pope's conduct towards ES as well as other women.

Pope represented himself during a bifurcated jury trial in March 2015. His defense was general denial or consent. A jury convicted him on both counts. In a separate trial, the same jury determined that the aggravator applied. The court imposed an indeterminate sentence with a minimum term of 220 months. The court did not use the aggravator in calculating Pope's sentence because the Supreme Court had recently decided State v. Brush, 183 Wn.2d 550, 353 P.3d 213 (July 2, 2015). In that case, the court held that the pattern jury instruction on the aggravator amounted to an impermissible comment on the evidence because it defined the statutory term "prolonged period of time" to mean "more than a few weeks." Brush, 183 Wn.2d at 558-59.

Pope appeals the judgment and sentence.

## RIGHT TO COUNSEL

Pope moved to proceed pro se during a hearing on July 7, 2014. The court engaged him in a colloquy about the consequences and details of pro se representation. The court granted Pope's request after finding that his decision was knowing and voluntary. Trial was set to begin on February 18, 2015.

The State requested to amend the information to add the history of domestic violence aggravator during an omnibus hearing on February 6, 2015. The court explained to Pope that if the aggravator was proven, he could face increased penalties. Pope expressed confusion; he said, "I feel like I'm being ambushed right now" and "I'm not clear on this. I don't understand it even though

3

you've gone over it." The court responded that Pope was being held to the same standard as a lawyer. The court entered an order allowing amendment of the information. Pope was arraigned on the aggravator.

On February 23, 2015, the parties appeared before the trial judge to discuss preliminary matters such as motions in limine. Pope again expressed confusion about the amendment. He told the judge "I don't understand the process" and asked whether requesting counsel was "out of order":

> [POPE:] So, at this point, obviously, it's things I'm unaware of and I'm just—I don't understand the process.
> [COURT:] Well, that's the problem when you represent yourself. But you've already gone through that colloquy with the judge that allowed you to represent yourself.
> . . . .
> [POPE:] So, to even request counsel at this time is out of order? How does that work?
> [COURT:] Your time to have an attorney has passed. So, we'll go through the trial memo and then break until tomorrow.

Pope later asked whether having standby counsel appointed was "doable." The trial court correctly informed him there is no right to standby counsel. State v. DeWeese, 117 Wn.2d 369, 379, 816 P.2d 1 (1991).

The jury was sworn in on March 2, 2015. Pope represented himself throughout the trial.

On appeal, Pope contends the trial court was required to engage him in a new colloquy about self-representation after the State added the aggravator. He further argues that the trial court did not adequately consider what he describes as his request for reappointment of counsel.

Criminal defendants have a right to waive assistance of counsel and to represent themselves at trial. DeWeese, 117 Wn.2d at 375. A waiver is valid if

4

made knowingly, voluntarily, and intelligently. State v. Modica, 136 Wn. App. 434, 441, 149 P.3d 446 (2006), aff'd, 164 Wn.2d 83, 186 P.3d 1062 (2008). The preferred procedure for determining the validity of a waiver is a colloquy. Modica, 136 Wn. App. at 441; DeWeese, 117 Wn.2d at 378. Pope does not assign error to the thoroughness of the colloquy that occurred on July 7, 2014, or otherwise challenge the validity of his initial waiver. Rather, his argument is that the court should have reevaluated his pro se status when he expressed confusion as the trial drew near.

Pope characterizes the alleged error as a deprivation of counsel, a type of error that requires automatic reversal without any inquiry into prejudice, citing Chapman v. California, 386 U.S. 18, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967). Chapman recognized that there are some constitutional rights, including the right to counsel, "so basic to a fair trial that their infraction can never be treated as harmless error." Chapman, 386 U.S. at 23 & n.8; Chapman does not provide the relevant standard for reviewing Pope's claim. We are not confronted with a deprivation of counsel. The issue is whether the court was obliged to appoint counsel for a defendant who had already validly waived the right to counsel.

A defendant who has validly waived counsel has relinquished the right to demand assistance of counsel as a matter of entitlement. Modica, 136 Wn. App. at 443. Whether counsel should be reappointed is a matter within the discretion of the trial court, considering all circumstances that exist when the request for reappointment is made. Modica, 136 Wn. App. at 443; State v. Canedo-Astorga,

79 Wn. App. 518, 525, 903 P.2d 500 (1995), review denied, 128 Wn.2d 1025 (1996). We held in Modica that the trial court was not required to sua sponte engage the defendant in a second full colloquy when the information was amended, approximately one week before the jury was empanelled, to add a charge of witness tampering. Modica, 136 Wn. App. at 440, 446. The trial court also did not abuse its discretion by denying the defendant's request for reappointment, made a day after the jury was empanelled. Modica, 136 Wn. App. at 440, 444. "The burdens imposed upon the trial court, the jurors, the witnesses, and the integrity of the criminal justice system increase as trial approaches or when trial has already commenced." Modica, 136 Wn. App. at 443. Thus, "the degree of discretion reposing in the trial court is at its greatest when a request for reappointment of counsel is made after trial has begun." Modica, 136 Wn. App. at 443-44.

Pope waived counsel in July 2014. He does not show a compelling reason why this waiver did not continue throughout the trial, as is the general rule. Modica, 136 Wn. App. at 445. He argues that amendment of the information on February 6, 2015, amounted to a substantial change in circumstances requiring a new colloquy, particularly because proving the aggravator would require evidence of other victims, and if proved, it carried the possibility of a life sentence. This argument is analogous to the claim rejected in Modica.

Pope asked about reappointment of counsel and appointment of standby counsel at the end of February 2015. He contends the trial court failed to

exercise its discretion to consider his request. We disagree. The judge told Pope his "time to have an attorney" had "passed." This comment reflects the court's consideration of the timeliness of Pope's request, a key factor bearing on whether reappointment was warranted. The record does not show that the trial judge categorically refused to reappoint counsel or was unaware of its discretion to do so.

It was not an abuse of discretion to deny reappointment under the circumstances. Had the court appointed counsel, the court likely would have been compelled to delay trial to allow new counsel adequate time to prepare. The likelihood of a trial delay was a primary reason reappointment was not warranted in Modica and Canedo-Astorga. Pope offered no reason why reappointment was necessary besides the fact that he was confused about the trial process. This is not a basis for reappointment because a defendant who chooses to represent himself "assumes the risk" of ineptitude. Canedo-Astorga, 79 Wn. App. at 526-27. "Self-representation is a grave undertaking, one not to be encouraged. Its consequences, which often work to the defendant's detriment, must nevertheless be borne by the defendant." DeWeese, 117 Wn.2d at 379. We conclude the trial court acted within its discretion by maintaining Pope's status as a self-represented defendant.

## PRIOR MISCONDUCT EVIDENCE

The trial court agreed to admit evidence of prior acts of abuse by Pope against ES, over Pope's objection. Evidence was admitted of psychological abuse between May and September 2013, including a time when Pope

threatened to kill ES and told her no one would be able to find her body; an incident in July 2013 when Pope shook ES's shoulders "really, really hard" because she was not performing oral sex the way he wanted; an incident in August 2013 when Pope threw ES onto a bed, straddled her, and pushed her face into the mattress until she could not breathe; and Pope's strangulation of ES on September 15, 2013, before he committed the strangulation and rape underlying the charges. The court found that the acts were admissible to explain the victim's delay in reporting and as proof of motive and intent. The court also found, as required, that the acts had been proven by a preponderance of the evidence and their probative value outweighed any prejudicial effect. State v. Gunderson, 181 Wn.2d 916, 923, 337 P.3d 1090 (2014).

Pope assigns error to admission of the above evidence. Evidence of a defendant's prior misconduct is not admissible to show criminal propensity, but it may be admissible for other purposes. ER 404(b); State v. Woods, 198 Wn. App. 453, 458, 393 P.3d 886 (2017). We review for an abuse of discretion. Woods, 198 Wn. App. at 458.

The evidence was properly admitted to explain ES's delay in reporting and, relatedly, her credibility. The record establishes that ES did not report the strangulation and rape that occurred on September 15, 2013, until more than a month later. Because her delay in reporting could be interpreted by the jury as inconsistent with her accusation of rape, the trial court had discretion to admit evidence that Pope had previously assaulted and threatened her. State v. Grant, 83 Wn. App. 98, 920 P.2d 609 (1996). A jury is entitled to evaluate the victim's

8

credibility "with full knowledge of the dynamics of a relationship marked by domestic violence and the effect such a relationship has on the victim." Grant, 83 Wn. App. at 108; see also Woods, 198 Wn. App. at 460 (evidence that the defendant previously promoted prostitution of the victim was relevant to jurors' understanding of the dynamics of their relationship). We find no abuse of discretion.

## PROSECUTORIAL MISCONDUCT

Pope alleges four instances of prosecutorial misconduct. He must demonstrate that the conduct was improper, viewed in context of the circumstances of the case. State v. Pierce, 169 Wn. App. 533, 552, 280 P.3d 1158, review denied, 175 Wn.2d 1025 (2012). He must also demonstrate the conduct was prejudicial. Pierce, 169 Wn. App. at 552. Conduct is prejudicial if there is a substantial likelihood that it affected the jury verdict. Pierce, 169 Wn. App. at 552.

A prosecutor commits misconduct by urging jurors to decide a case based on evidence outside the record. Pierce, 169 Wn. App. at 553. Mere appeals to the jury's passion or prejudice are also improper. Pierce, 169 Wn. App. at 552. "A prosecutor is not barred from referring to the heinous nature of a crime but nevertheless retains the duty to ensure a verdict 'free of prejudice and based on reason.'" Pierce, 169 Wn. App. at 553, quoting State v. Claflin, 38 Wn. App. 847, 849-50, 690 P.2d 1186 (1984). A prosecutor may comment on a witness's veracity so long as a personal opinion is not expressed and the comments are

not intended to incite the jury's passion. State v. Stith, 71 Wn. App. 14, 21, 856 P.2d 415 (1993).

First, in her opening statement, the prosecutor said that the victim's "eyes rolled in the back of her head" when Pope strangled her. Pope objected. He now contends there was no evidence at trial to support this image. It is true that ES did not specifically testify that her eyes rolled back in her head. But she did testify that Pope choked her until she fainted, a condition often associated with rolling back of the eyes. Even if the remark veered toward the edge of being inflammatory, it is unlikely that it substantially affected the jury verdict. ES testified in detail about the strangulation, and the jury received the standard instruction that instructions are not evidence.

Second, the prosecutor argued in closing that Pope "knew" ES "would become the perfect victim":

> [STATE:] When Eton Pope saw [ES] at that bus stop in May 2013, he knew.
> [POPE:] I object, Your Honor.
> [STATE:] He knew that he—
> [COURT:] Overruled.
> [STATE:] —could mold her, he knew that he could shape her, and he knew—
> [POPE:] I object, Your Honor.
> [COURT:] Overruled.
> [STATE:] —she would become the perfect victim. And we know he knew that because during that very first encounter he refused to give his last name.
> [POPE:] I object. That's not into evidence, Your Honor.
> [COURT:] Overruled.
> [STATE:] And that's likely because he knew what he had in store for her.
> And learn her, he did. He spent six weeks figuring out what [ES] was—
> [POPE:] Objection.
> [COURT:] Overruled.

10

[POPE:] That's insinuation.

[STATE:] Figuring out what she was desperate for, figuring out what she was hoping for. And, when he finally figured out what she believed a perfect man was, he briefly became that man and then quickly turned into exactly what she feared.

[POPE:] I object, Your Honor.

[COURT:] Overruled.

[STATE:] Eton Pope played on [ES's] hope and desperation to slowly and methodically break her down, and, when he felt she was in the right place, properly destroyed, he went a little further. And each time she forgave him, each time she felt sorry for him, and each time she felt that she could fix him, he gained a little more power.

Pope challenges this line of argument on the basis that it was inflammatory and unsupported by the evidence, like the argument that led to reversal in Pierce. In that case, the prosecutor in rebuttal argument appealed to the jury's passion and prejudice "by asking it to place itself in the shoes of two victims of a brutal killing," by speculating on Pierce's thought process leading up to the crime, and by "fabricating an emotionally charged story of how the victims might have struggled with Pierce and pleaded for mercy." Pierce, 169 Wn. App. at 537. The improper remarks "encouraged the jury to decide the case based on the prosecutor's heart-wrenching, though essentially fabricated, tale of how the murders occurred." Pierce, 169 Wn. App. at 555.

The prosecutor's assertion that Pope knew ES would become the perfect victim is not analogous to the fabricated story challenged in Pierce. The record shows that Pope did subject ES to a pattern of intimidation and aggression. ES testified "He kind of came in and just kind of broke me." It was not an unreasonable inference from the evidence to describe Pope as calculating and manipulative.

11

Third, Pope contends that by describing ES as brave and courageous, the prosecutor improperly vouched for her credibility. We disagree. The remark is more reasonably understood as an inference based on ES's demeanor on the stand.

Fourth, Pope challenges the prosecutor's appeal to the jury to "finish this chapter the right way." This remark came at the end of the prosecutor's discussion of evidence supporting the elements of the crimes. The comment is reasonably understood as an assertion that guilty verdicts were warranted because the crimes had been proven. Viewed in context, the remark was not improper.

In sum, none of the challenged remarks lead to a conclusion that Pope did not have a fair trial.

## DOUBLE JEOPARDY

Pope contends the assault conviction merged with the rape and should be vacated on double jeopardy grounds. We review this claim de novo. State v. Mandanas, 163 Wn. App. 712, 717, 262 P.3d 522 (2011).

Under the merger doctrine, "when the degree of one offense is raised by conduct separately criminalized by the legislature, we presume the legislature intended to punish both offenses through a greater sentence for the greater crime." State v. Freeman, 153 Wn.2d 765, 772-73, 108 P.3d 753 (2005). The rule applies only where the legislature has clearly indicated that in order to prove a particular degree of crime, the State must prove not only that the defendant committed that crime but also that the crime was accompanied by an act which is

12

defined as a crime elsewhere in the criminal statutes. Freeman, 153 Wn.2d at 777-78. Here, to elevate the act of sexual intercourse to second degree rape, the State had to prove that Pope used forcible compulsion. RCW 9A.44.050(1)(a).

Pope contends the State used the strangulation to prove forcible compulsion. We disagree. As ES described the strangulation, it occurred before the rape began. To prove forcible compulsion, the State relied on Pope's acts of holding ES's hands over her head and putting the belt in her mouth. This was not a case in which the sole purpose of the strangulation was to compel submission to rape. State v. Johnson, 92 Wn.2d 671, 681, 600 P.2d 1249 (1979), cert. dismissed, 446 U.S. 948 (1980). The strangulation was a separate assault with a separate purpose: to quiet ES when she was talking back. The injury from strangulation was independent of the injury from rape. Pope has not shown a double jeopardy violation.

## STATEMENT OF ADDITIONAL GROUNDS

Pope's statement of additional grounds alleges that the prosecutor engaged in misconduct by commenting on his failure to testify and knowingly eliciting false testimony from ES. The record does not support this claim.

Pope also claims a violation of his right to counsel, but he does not provide a basis for review that is different from the argument in the brief of appellant addressed above.

13

## ERROR ON JUDGMENT AND SENTENCE

The jury determined by special verdict that the aggravator for a history of domestic violence applied. The sentencing judge vacated the aggravator under Brush, but there remains a check in the box on the judgment and sentence indicating that the aggravator applies. We remand for correction of the error.

Affirmed.

Becker, J.

WE CONCUR:

Leach, J.

Cox, J.