FILED
9/23/2019
Court of Appeals
Division I
State of Washington

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 78078-6-I |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | UNPUBLISHED OPINION |
| JAMES MONTGOMERY, | ) | |
| | ) | FILED: September 23, 2019 |
| Appellant. | ) | |
| | ) | |

VERELLEN, J. — James Montgomery appeals his conviction for one count of fourth degree assault and two counts of attempted indecent liberties. Montgomery argues the State failed to present sufficient evidence to support his conviction for attempted indecent liberties in count 3. The State presented evidence that Montgomery followed, tackled, and restrained E.H. as part of a common scheme or plan to make forcible sexual contact with random women. There was sufficient evidence to sustain his conviction on count 3.

Montgomery also contends he received ineffective assistance of counsel. Because defense counsel's decision to withdraw his requested limiting instruction was a reasonable trial tactic, Montgomery does not establish ineffective assistance.

Finally, Montgomery challenges the court's imposition of the mental health evaluation community custody condition. Because the court did not make the statutorily required findings, we remand for the court to consider this condition under RCW 9.94B.080.

Therefore, we affirm but remand for proceedings consistent with this opinion.

## FACTS

The State charged Montgomery with one count of indecent liberties (C.B.) and two counts of attempted indecent liberties (T.M. and E.H.). As to the count of indecent liberties, the jury convicted Montgomery of the lesser charge of fourth degree assault. As to the two counts of attempted indecent liberties, the jury convicted Montgomery as charged.

Montgomery appeals.

## ANALYSIS

### I. Sufficiency of the Evidence

Montgomery contends there was insufficient evidence to sustain his conviction for attempted indecent liberties on count three (E.H.).

We review sufficiency of the evidence de novo.[1] To determine whether there is sufficient evidence to sustain a conviction, we view the evidence in the light most favorable to the State and ask whether any rational trier of fact could

---

[1] State v. Hummel, 196 Wn. App. 329, 352, 383 P.3d 592 (2016) (quoting State v. Rich, 184 Wn.2d 897, 903, 365 P.3d 746 (2016)).

have found the essential elements of the crime beyond a reasonable doubt.[2] "A claim of insufficiency admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom."[3]

"A person is guilty of indecent liberties when he or she knowingly causes another person to have sexual contact with him or her or another . . . [b]y forcible compulsion."[4] Because the State charged Montgomery with attempted indecent liberties, the State must show Montgomery took a substantial step toward the crime of indecent liberties, with the intent to commit that crime.[5]

Montgomery claims the State failed to prove he intended to have sexual contact with E.H. "'Sexual contact' means any touching of the sexual or other intimate parts of a person done for the purpose of gratifying sexual desire of either party or a third party."[6]

Here, on April 19, 2017, E.H. was walking in the Ravenna neighborhood of Seattle.[7] E.H. noticed Montgomery walking a few steps behind her.[8] She

---

[2] State v. Elmi, 166 Wn.2d 209, 214, 207 P.3d 439 (2009).

[3] State v. Salinas, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992).

[4] RCW 9A.44.100(1)(a).

[5] RCW 9A.28.020.

[6] RCW 9A.44.010(2).

[7] Report of Proceedings (RP) (Feb. 1, 2018) at 354, 360.

[8] Id. at 361.

quickened her pace.[9] After she turned back around, she felt pressure on her arms.[10] E.H. was "grabbed and forcibly pulled to the side."[11]

She ended up on her back, "laying on top of [her] backpack, on the ground."[12] Montgomery grabbed her wrists and pinned them to the ground at her sides.[13] E.H. did not "recall where his lower body was, because it was very fast."[14] E.H. did recall that her "legs were bent upward and forcibly kicking" some part of the man's body.[15] E.H. kicked, flailed, and screamed for help.[16]

After less than a minute, Montgomery ran away when another man ran across the street, and a car honked.[17] At the time, E.H. was wearing her backpack and headphones.[18] Montgomery did not take any of her property.[19]

A month and half earlier, on March 7, 2017, C.B. was walking home in the Belltown neighborhood of Seattle.[20] C.B. noticed Montgomery walking behind

---

[9] Id.
[10] Id.
[11] Id. at 363.
[12] Id.
[13] Id. at 363-64.
[14] Id. at 364.
[15] Id.
[16] Id. at 364-65.
[17] Id. at 366.
[18] Id. at 355-56.
[19] Id. at 367, 370.
[20] RP (Jan. 30, 2018) at 281.

her.[21] He followed her into her apartment building, into the elevator, and to her apartment door.[22] At her door, Montgomery grabbed her arms from behind.[23] C.B. felt Montgomery touch her chest and breasts.[24] She "felt like he was trying to pull [her jacket] off."[25] C.B. screamed and her husband opened the door, pulled C.B. into the apartment, and advanced towards Montgomery.[26] Montgomery backed away and left.[27]

On April 17, 2017, T.M. was walking in the First Hill neighborhood of Seattle.[28] T.M. noticed Montgomery walking close behind her.[29] He wrapped his arms around her body and threw her to the ground.[30] Montgomery knelt over T.M. with his knees on either side of her waist.[31] He tugged at the waistband of her pants.[32] The man walked away when a van pulled up and honked its horn.[33]

---

[21] Id. at 288.

[22] Id. at 291, 292-94.

[23] Id. at 295.

[24] Id. at 298-99, 303.

[25] Id. at 300.

[26] Id. at 295-96, 299, 301.

[27] Id. at 301.

[28] RP (February 1, 2018) at 449.

[29] Id. at 451-55.

[30] Id. at 455.

[31] Id. at 455-56.

[32] Id. at 458, 460.

[33] Id. at 461-62.

Police were able to find Montgomery based on his car. C.B., T.M., and E.H. individually identified Montgomery. Several other witnesses also identified him.

At the start of trial, Montgomery moved to sever the three counts. The court denied the motion and determined "[t]he evidence of what happened in each of the alleged cases is cross-admissible because of the common scheme demonstrated in each one."[34]

Montgomery followed E.H. He also followed C.B. and T.M. Montgomery tackled E.H. to the ground and pinned her wrists to her sides. He also restrained C.B. and T.M. Montgomery touched C.B.'s chest and breasts. And he tugged at T.M.'s pants. Montgomery did not take any personal property from any of the women. Montgomery did not know any of the women. In all three instances, Montgomery walked away when third parties intervened. Although Montgomery did not touch E.H.'s chest or breasts or tug at her pants, the evidence across all three counts shows Montgomery had a common scheme or plan of following, restraining, and forcibly making sexual contact with random women.[35]

Viewing the evidence in the light most favorable to the State, the evidence supports a reasonable inference that Montgomery took a substantial step toward

---

[34] RP (Jan. 24, 2018) at 36.

[35] See State v. DeVincentis, 150 Wn.2d 11, 21, 74 P.3d 119 (2003) ("[A]dmission of evidence of a common scheme or plan requires substantial similarity between the prior bad acts and the charged crime. Such evidence is relevant when the existence of the crime is at issue. Sufficient similarity is reached only when the trial court determines that the 'various acts are naturally to be explained as caused by a general plan.'") (quoting State v. Lough, 125 Wash.2d 847, 860, 889 P.2d 487 (1995)).

causing E.H. to have sexual contact with him when he followed, tackled, and restrained her. We conclude Montgomery's conviction for attempted indecent liberties in count three was supported by sufficient evidence.

## II. Ineffective Assistance of Counsel

Montgomery seeks reversal and remand for a new trial due to ineffective assistance of counsel. Montgomery argues defense counsel provided ineffective assistance by withdrawing the limiting instruction.

We review a claim of ineffective assistance of counsel de novo.[36] The defendant bears the burden of proving ineffective assistance of counsel.[37] First, the defendant must prove counsel's performance was deficient.[38] Second, the defendant must show counsel's deficient performance prejudiced his defense.[39]

Here, before trial, defense counsel moved to sever each of the three counts. The court denied the motion and determined the evidence in each count was cross-admissible to show "the common scheme demonstrated in each one."[40] When the court denied the motion, it indicated it would instruct the jury to consider each count separately.

---

[36] State v. Sutherby, 165 Wn.2d 870, 883, 204 P.3d 916 (2009).

[37] State v. Grier, 171 Wn.2d 17, 33, 246 P.3d 1260 (2011) (quoting Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed.2d 674 (1984)).

[38] Id. at 32 (quoting Strickland, 466 U.S. at 687).

[39] Id. at 33 (quoting Strickland, 466 U.S. at 687).

[40] RP (Jan. 24, 2018) at 36.

At trial, after the State rested, the court denied defense counsel's renewed motion to sever. Subsequently, defense counsel proposed the following limiting instruction. In part, the proposed instruction provided:

> Evidence admitted related to each distinct count can be considered for the other counts only for the limited purpose of determining whether the defendant engaged in a common scheme or plan or the defendant's identity, but not for considering the defendant's motive or intent, or for any other purpose related to the other counts.[41]

In response, the court proposed the following language:

> Evidence admitted related to each distinct count may be considered for the other counts only for the limited purposes of determining whether the defendant engaged in a common scheme or plan, or determining the defendant's identity. You may not consider such evidence for any other purpose. Any discussion of the evidence during your deliberations must be consistent with this limitation.[42]

Defense counsel objected to the court's instruction. After hearing argument, the court indicated it would give its version of the instruction.[43] As a result, defense counsel decided to withdraw his request for a limiting instruction.[44] Ultimately, the court did not give Montgomery or the court's proposed limiting instruction. But the court instructed the jury: "A separate crime is charged in each

---

[41] Clerk's Papers (CP) at 54.

[42] CP at 139.

[43] RP (Feb. 6, 2018) at 638.

[44] Id. at 638-39.

count. You must decide each count separately. Your verdict on one count should not control your verdict on any other count."[45]

Montgomery argues counsel's decision to withdraw the limiting instruction was unreasonable. When defense counsel's decisions "can be characterized as legitimate trial strategy or tactics, performance is not deficient."[46] More precisely, "'[t]he relevant question is not whether counsel's choices were strategic, but whether they were reasonable."[47] Because "'[s]crutiny of counsel's trial tactics is deferential, . . . the presumption of adequate representation is not overcome if there is any "conceivable legitimate tactic" that can explain counsel's performance."[48]

Limiting instructions restrict the purpose for which a jury considers evidence. ER 105 provides, "When evidence which is admissible as to one party or for one purpose but not admissible as to another party or for another purpose is admitted, the court, upon request, shall restrict the evidence to its proper scope and instruct the jury accordingly."

The State does not dispute Montgomery was entitled to a limiting instruction. And the court's proposed instruction complied with ER 105. The

---

[45] CP at 73.

[46] State v. Kyllo, 166 Wn.2d 856, 863, 215 P.3d 177 (2009).

[47] Grier, 171 Wn.2d at 34 (quoting Roe v. Flores-Ortega, 528 U.S. 470, 481, 120 S. Ct. 1029, 145 L. Ed. 2d 985 (2000)).

[48] In re Det. of Hatfield, 191 Wn. App. 378, 401-02, 362 P.3d 997 (2015) (quoting State v. Bander, 150 Wn. App. 690, 720, 208 P.3d 1242 (2009); State v. Reichenbach, 153 Wn.2d 126, 130, 101 P.3d 80 (2004)).

instruction informed the jury that the evidence of each count was cross-admissible to determine whether the defendant engaged in a common scheme or plan or to determine the defendant's identity. And the instruction informed the jury that the evidence was not admissible "for any other purpose." But defense counsel was concerned that this language amounted to no limitation.

The only substantive difference between the two proposed instructions was Montgomery's instruction specifically instructed the jury to not consider the cross-admissible evidence for motive or intent, rather than the court's instruction that merely instructed the jury to not consider it for "any other purpose." It is conceivable that defense counsel decided the court's proposed instruction unfavorably emphasized the cross-admissibility of the evidence of each count to show a common scheme or plan without explicitly reminding the jury they were not to consider the evidence for motive or intent.[49]

Counsel's decision to withdraw the limiting instruction was a legitimate trial tactic and did not constitute ineffective assistance of counsel. Because Montgomery fails to prove that his defense counsel was deficient, we need not address whether his counsel's decision prejudiced his trial.

---

[49] See, e.g., State v. Woods, 198 Wn. App. 453, 461, 393 P.3d 886 (2017) ("[A] separate limiting instruction . . . could serve as an unwanted reminder of damaging testimony.").

## III. Mental Health Evaluation

Montgomery asks us to strike the community custody condition requiring him to complete a mental health evaluation.

Under RCW 9.94B.080,

> The court may order an offender whose sentence includes community placement or community supervision to undergo a mental status evaluation and to participate in available outpatient mental health treatment, if the court finds that reasonable grounds exist to believe that the offender is a mentally ill person as defined in RCW 71.24.025, and that this condition is likely to have influenced the offense.

The State concedes the court did not make the statutorily required findings. We accept the State's concession. However, the State argues this case should be remanded for the trial court to reconsider the condition under RCW 9.94B.080.

In State v. Shelton, the trial court found "mental health issues contributed to his offense," but it did not find the defendant "is a mentally ill person."[50] This court accepted the State's concession that the court did not comply with RCW 9.94B.080 and remanded "to determine whether to order a mental health evaluation according to the requirements set forth in former RCW 9.94B.080."[51]

In State v. Brooks, when considering the same issue, Division Three of this court reversed the community custody condition regarding mental health evaluation and treatment because "there was no finding that [the defendant] was a

---

[50] 194 Wn. App. 660, 676, 378 P.3d 230 (2016).
[51] Id.

11

mentally ill person whose condition influenced the offense."[52]  Montgomery argues we should strike the condition under Brooks rather than remand under Shelton.

Because public safety and Montgomery's own wellbeing may be served by a mental health evaluation and treatment, we follow this court's approach in Shelton and remand for the trial court to consider this condition under RCW 9.94B.080.

Therefore, we affirm Montgomery's convictions and remand for consideration consistent with this opinion.

WE CONCUR:

---

[52] 142 Wn. App. 842, 851, 176 P.3d 549 (2008).