IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | | |
|---|---|---|
| In the Matter of the Personal Restraint of | ) ) ) ) ) | No. 82973-4-I |
| ROBERT LEE HARRIS, | ) ) | UNPUBLISHED OPINION |
| Petitioner. | ) ) ) | |

VERELLEN, J. — Robert Lee Harris was convicted of violating the Uniform Controlled Substances Act[1] after he sold methamphetamine to an undercover police officer. In this personal restraint petition (PRP), he argues retrial or a reference hearing is required because the government violated his constitutional right to discovery or because defense counsel was ineffective by failing to investigate his limited cooperation as a confidential informant. Because the government did not withhold evidence and defense counsel conducted a reasonable investigation under the circumstances, his arguments fail.

Therefore, we dismiss his petition.

---

[1] Ch. 69.50 RCW.

FACTS

Harris sold methamphetamine to an undercover police officer during a buy-bust operation and was arrested.[2]  Seattle Police Department Officer Matthew Blackburn offered Harris the opportunity to avoid being jailed or charged if he became a confidential informant.[3]  Harris would be required to report to Officer Blackburn within five days and to complete three drug transactions with suspected drug dealers.[4]  Within an hour after making this deal and before being brought to the East Precinct, Harris completed one transaction.[5]  He then signed an official confidential informant agreement and, about an hour later, confessed to selling methamphetamines.[6]  He was not jailed that day.  He did not contact Officer Blackburn again or complete another drug transaction.[7]  Officer Blackburn forwarded charges to the King County Prosecutor's Office.[8]  Harris was charged with delivering methamphetamine in violation of the Uniform Controlled Substances Act.

Almost one month before trial, the State disclosed to defense counsel that Harris agreed to become a confidential informant.  At least one week before trial,

---

[2] State v. Harris, No. 80372-7-I, slip op. at 1 (Wn. Ct. App., Oct. 5, 2020), http://www.courts.wa.gov/opinions/pdf/803727.pdf.

[3] Id. at 2-3.

[4] Id. at 3.

[5] Pet'r Supp. Br., App. at 74-75.

[6] Id.

[7] Id. at 75.

[8] Id.

Harris confirmed for defense counsel that he had agreed to become a confidential informant and had set up a controlled buy. Defense counsel asked her investigator to obtain corroborating documents.

The court held a CrR 3.5 hearing about suppressing Harris's confession. Officer Blackburn testified that Harris agreed to become a confidential informant. But, he explained, Harris eventually ended up being booked into jail and charged "[b]ecause he did not contact us and follow through on his agreement."[9] Defense counsel did not challenge this characterization. The court made detailed findings and concluded Harris's confession was admissible.

At trial, Harris asserted a general denial defense and expressly declined to argue an alternative theory. The State played Harris's confession. Officer Blackburn testified Harris did not "follow up" on the confidential informant agreement.[10] The State also presented evidence from the undercover officer who purchased methamphetamine from Harris, an officer who arrested Harris and found methamphetamine on him, and a scientist from the Washington State Patrol Crime Laboratory who testified the substances sold by and found on Harris were both methamphetamine. Harris was convicted. This court affirmed Harris's conviction on direct appeal.

Harris filed a CrR 7.8 motion, requesting retrial and alleging that the State violated his constitutional right to discovery and that he received ineffective

---

[9] Report of Proceedings (RP) (July 11, 2019) at 244.
[10] RP (July 15, 2019) at 484.

assistance of counsel. Following oral argument, the superior court concluded he failed to make "'a substantial showing that he . . . is entitled to relief."[11] It transferred Harris's motion to this court as a PRP.[12] Acting pro se, Harris then filed a new PRP with this court alleging the same issues originally raised in his CrR 7.8 motion. The matters were consolidated.

## ANALYSIS

### I. Discovery Violation

Harris contends the State violated the Constitution by failing to disclose that he completed one controlled drug buy. The State argues no constitutional discovery, or Brady,[13] violation occurred because Harris knew all of the allegedly withheld information.

We review an alleged Brady violation de novo because it presents a potential constitutional violation.[14] A Brady violation can occur when the State fails to disclose "'evidence favorable to an accused . . . where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith'" of the State.[15] Thus, the State has a duty to disclose exculpatory and impeachment

---

[11] Pet'r Supp. Br., App. at 116 (quoting CrR 7.8(c)(2)).

[12] Harris does not argue the superior court erred by transferring his motion to this court as a PRP.

[13] Brady v. Maryland, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963).

[14] Matter of Pers. Restraint of Malumba, ___ Wn.2d ___, 508 P.3d 645, 651 (2022) (citing State v. Mullen, 171 Wn.2d 881, 894, 259 P.3d 158 (2011)).

[15] Mullen, 171 Wn.2d at 894 (quoting Brady, 373 U.S. at 87).

evidence possessed by prosecutors and law enforcement.[16]  But the State has not committed a Brady violation "where 'a defendant has enough information to be able to ascertain the supposed Brady material on his own.'"[17]  And no violation has occurred when "defense counsel was put on notice as to potential Brady material and given the opportunity to seek it out."[18]

Here, almost one month before trial, the prosecutor told defense counsel about Officer Blackburn's agreement to "'work off his charges' by assisting police by buying drugs" and explained that "Harris did not follow through with his end of the deal."[19]  At this point, defense counsel had the information to ask Harris about his role as a confidential informant.  Harris had signed a confidential informant agreement requiring completion of three controlled buys.  Before the CrR 3.5 suppression hearing and at least one week before trial, Harris told defense counsel "that he did cooperate with the officers and even made a call to a friend to set up a controlled buy."[20]  Defense counsel asked her investigator to seek out

---

[16] Id. (citing Giglio v. United States, 405 U.S. 150, 154-55, 92 S. Ct. 763, 31 L. Ed. 2d 104 (1972); United States v. Agurs, 427 U.S. 97, 110, 96 S. Ct. 2392, 49 L. Ed. 2d 342 (1976); Kyles v. Whitley, 514 U.S. 419, 437, 115 S. Ct. 1555, 131 L. Ed 2d 490 (1995)).

[17] Id. at 896 (quoting United States v. Aichele, 941 F.2d 761, 764 (9th Cir. 1991).  Contrary to Harris's assertion that this proposition from Aichele is no longer good law, the Ninth Circuit affirmed it in United States v. Bond, 552 F.3d 1092, 1096 (9th Cir. 2009).  Id. n.4.

[18] Amado v. Gonzalez, 758 F.3d 1119, 1137 (9th Cir. 2014) (citing Bond, 552 F.3d at 1097).

[19] Pet'r Supp. Br., App. at 23.

[20] Id. at 29.

corroborating evidence. Although Harris now argues defense counsel was unable to impeach Officer Blackburn and other officers at the suppression hearing and at trial about his partial cooperation as a confidential informant, he is contradicted by the record. Defense counsel had the information necessary to, both at the CrR 3.5 hearing and at trial, impeach Officer Blackburn's testimony that Harris had not cooperated after agreeing to work as a confidential informant.[21] Because the allegedly withheld material was in defense counsel's possession, the State did not withhold it.[22] Harris fails to establish a Brady violation.[23]

II. Ineffective Assistance of Counsel

We review a claim of ineffective assistance of counsel de novo.[24] A defendant bears the burden of proving defense counsel was ineffective.[25] The

---

[21] Harris does not argue his statements to his counsel would not have provided a sufficient foundation to impeach Officer Blackburn, so we do not consider it.

[22] Mullen, 171 Wn.2d at 896 (quoting Aichele, 941 F.2d at 764). Harris also argues the State committed a Brady violation because testifying officers did not clearly explain his limited cooperation with the confidential informant agreement. But he fails to explain how this constitutes a Brady violation when the State did not withhold this information. Also, Harris cites no authority for the proposition that a police officer providing accurate but imprecise testimony constitutes a Brady violation when, in fact, he did not truly cooperate by fulfilling his promise and completing three controlled buys.

[23] See State v. Davis, 3 Wn. App. 2d 763, 789, 418 P.3d 199 (2018) (concluding alleged Brady material was not withheld when the evidence was disclosed to the defendant before pretrial hearings). Confusingly, Harris alleges defense counsel was ineffective because she "failed to follow up on information disclosed by the defendant in time for use at pretrial negotiation." Reply Br. at 18.

[24] State v. Koeller, 15 Wn. App. 2d 245, 257, 477 P.3d 61 (2020) (citing State v. Sutherby, 165 Wn.2d 870, 883, 204 P.3d 916 (2009)).

[25] Id. (citing State v. Grier, 171 Wn.2d 17, 33, 246 P.3d 1260 (2011)).

defendant must prove defense counsel's performance was deficient and prejudiced him.[26] We presume defense counsel provided effective representation,[27] but this presumption can be rebutted by proving "that 'there is no conceivable legitimate tactic explaining counsel's performance.'"[28] Failure to prove either deficiency or prejudice ends the analysis.[29]

Harris argues defense counsel was ineffective because she failed to adequately investigate his cooperation as a confidential informant. Effective assistance "'includes a "reasonable investigation" by defense counsel.'"[30] The appropriate "'degree and extent of investigation required will vary depending upon the issues and facts of each case.'"[31]

Harris fails to establish defense counsel acted unreasonably during her investigation because she had the necessary information under the circumstances. Almost one month before trial, the State told defense counsel that Harris was a confidential informant who failed to fulfill his side of the bargain.

---

[26] Id. (citing Grier, 171 Wn.2d at 32-33).

[27] Matter of Pers. Restraint of Hopper, 4 Wn. App. 2d 838, 844, 424 P.3d 228 (2018) (citing In re Pers. Restraint of Davis, 152 Wn.2d 647, 673, 101 P.3d 1 (2004)).

[28] Grier, 171 Wn.2d at 33 (quoting State v. Reichenbach, 153 Wn.2d 126, 130, 101 P.3d 80 (2004)).

[29] State v. Woods, 198 Wn. App. 453, 461, 393 P.3d 886 (2017) (citing State v. Hendrickson, 129 Wn.2d 61, 78, 917 P.2d 563 (1996)).

[30] State v. Lopez, 190 Wn.2d 104, 116, 410 P.3d 1117 (2018) (quoting State v. Boyd, 160 Wn.2d 424, 434, 158 P.3d 54 (2007)).

[31] State v. Fedoruk, 184 Wn. App. 866, 880, 339 P.3d 233 (2014) (quoting State v. A.N.J., 168 Wn.2d 91, 111, 225 P.3d 956 (2010)).

Pretrial, both Harris and defense counsel knew that he cooperated by completing only one controlled buy. Harris does not explain what additional information defense counsel should have discovered, alleging only that she should have found evidence to corroborate his knowledge that he completed one controlled buy. He appears to argue defense counsel could not validly select trial tactics, such as whether to impeach testifying officers, because she lacked material information to make such a decision.[32] But because Harris and his counsel knew he failed to complete two of the three required controlled buys, his counsel had adequate material information to select reasonable trial tactics.

Further, additional proof of Harris's limited cooperation would have been of little use at trial given his general denial strategy. Defense counsel argued the State failed to prove its case due to investigative gaps and lack of solid proof that Harris actually sold drugs. As part of this strategy, defense counsel sought to undermine the validity of the cooperation agreement by implying that it was the product of police pressure. Harris does not argue this was an unreasonable trial strategy, and defense counsel would have undermined it by proving Harris began cooperating with the confidential informant agreement. Indeed, doing so would have bolstered Officer Blackburn's testimony that Harris agreed to serve as a

_____

[32] To the extent Harris argues defense counsel was deficient for not asking for a continuance, he does not discuss whether the court was likely to grant such a continuance and, even if it had, how a continuance would have affected the outcome of trial. Thus, he fails to address whether this alleged deficiency was prejudicial.

confidential informant to "work[ ] off his charges."[33]  Under the circumstances,[34]

Harris fails to show defense counsel conducted a deficient investigation.[35]

Therefore, we dismiss the petition.

_____

WE CONCUR:

_____          _____

---

[33] RP (July 15, 2019) at 479.

[34] See Fedoruk, 184 Wn. App. at 880 (reasonableness of defense counsel's investigation depends "'upon the issues and facts of each case'") (quoting A.N.J., 168 Wn.2d at 111).

[35] Because Harris fails to establish a deficient investigation, we do not consider whether it affected plea negotiations.  See Woods, 198 Wn. App. at 461 (failure to prove deficiency ends this analysis) (citing Hendrickson, 129 Wn.2d at 78).