**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

| | |
|---|---|
| STATE OF WASHINGTON, | DIVISION ONE |
| Respondent, | No. 86172-7-I |
| v. | UNPUBLISHED OPINION |
| JESSE WILLIAM GAMEZ, | |
| Appellant. | |

DWYER, J. — Jesse Gamez appeals from the judgment entered on a jury's verdict finding him guilty of two felony counts of unlawful delivery of a controlled substance and one felony count of bail jumping. On appeal, Gamez alleges that the amended information was constitutionally deficient in charging him with the crime of bail jumping. This is so, he asserts, because the information failed to include all of the essential elements of the offense. Gamez also alleges that he was denied effective assistance of counsel when his attorney did not object to certain evidence pursuant to ER 404(b). Additionally, Gamez appeals a sentencing error regarding a superseded motor vehicle statute and a sentencing decision that imposed a $500 victim penalty assessment on him, although he was an indigent defendant.

We conclude that the State has not met the requirements of the test for determining sufficiency of the charging document for bail jumping when the issue was raised for the first time on appeal. We also conclude that defense counsel

provided effective assistance to Gamez, and that the attorney's decision not to object to certain evidence on the basis of ER 404(b) is not shown to have been either deficient or prejudicial. The State concedes the sentencing errors regarding the superseded version of the motor vehicle statute and the imposition of the victim penalty assessment.

Accordingly, we reverse the bail jumping conviction and remand the matter to the trial court with directions to dismiss that charge without prejudice. We affirm the two remaining convictions. Finally, we reverse the two challenged sentencing provisions and remand the matter to the trial court to properly apply the applicable motor vehicle statute and to vacate the imposition of the victim penalty assessment.

I

On June 2, 2020, the Thurston Narcotics Task Force, with the help of a local community resident, J.D.,[1] undertook a controlled heroin buy with J.D.'s 14-year old friend, J.H. Jordan Goss was a task force detective. To undertake the buy, Detective Goss gave J.D. both a body wire device to wear and cash money that was marked with recorded serial numbers. J.H.'s mother helped to arrange the drug sale, unaware that undercover police officers were organizing the buy. The alleged seller was Jesse Gamez, who J.H. had previously met through his mother. During the transaction, Gamez handed over 0.8 grams of heroin and 0.6

---

[1] We choose to identify this individual by the use of initials instead of by use of a full name.

2

grams of methamphetamine to J.H., who then gave the controlled substances to J.D. The drugs were exchanged for $70.

The drug deal was conducted while under surveillance by several members of the task force. When Gamez drove away from the scene in a truck, other task force officers followed the vehicle to Aberdeen. In Aberdeen, officers intercepted Gamez, who was accompanied by a female passenger. Officers questioned Gamez, who admitted that he had arranged to sell drugs to J.H.'s mother. He also admitted to selling $70 worth of heroin and methamphetamine to J.H.

Law enforcement officers obtained a search warrant and searched Gamez's vehicle. Inside the truck, Detective Goss found a wallet with cash, which included the $70 of marked bills, along with a backpack containing methamphetamine and a digital scale. Two debit cards and a Social Security card in the name of someone not associated with the arrest were also found in a bag in the back of the truck. On June 8, 2020, the State arrested and charged Gamez with two counts of unlawful delivery of a controlled substance.

On June 22, 2021, the trial court signed an order releasing Gamez from custody. The court order stated that Gamez should "appear as directed by the court." The order included language alerting Gamez that any failure to appear for future court dates could result in an issuance of a bench warrant.

On May 2, 2022, the trial court entered an order and notice, setting the trial confirmation hearing for June 16, 2022 and commencement of the trial for June 27, 2022. The May 2 order stated that Gamez was to appear at the

Thurston County Courthouse and that a failure to appear would result in the issuance of a warrant for his arrest. The defendant signed the order. At trial, the State urged that the order was signed by Gamez, although it became unclear whether Gamez could have signed it in person or whether the hearing had been held over Zoom. The trial court entered an order at a trial confirmation hearing on June 16, 2022, again setting the trial for June 27, 2022.

On June 21, 2022, a deputy prosecutor informed defense counsel that Gamez had been shot in the arm and that he had been admitted to Harborview Medical Center in Seattle for surgery to remove the bullet and related care. Defense counsel was able to corroborate this information from information provided by third parties. Gamez's defense counsel moved to continue the trial on June 23, 2022, given his inability to communicate with Gamez and discern the state of his health. The court denied the motion. Gamez did not appear for trial on June 27, 2022. That same day, an amended information adding the charge of felony bail jumping was filed. The next day, an order for a bench warrant after failure to appear was filed.

A jury trial commenced, beginning with voir dire, on September 6, 2022. Opening statements began on September 7. The majority of the trial testimony concerned the first two counts of the charges—delivery of the controlled substances of heroin and methamphetamine.

Detective Goss testified about the general procedures undertaken during undercover drug buying operations, as well as those taken to observe and listen to the transaction with Gamez. Detective Goss testified about obtaining a

warrant to search Gamez's vehicle once he had been apprehended, and that inside the vehicle he had found a wallet with the $70 of marked bills previously recorded for the drug transaction. He also found methamphetamine and a digital scale in a backpack in the truck. He testified that during the search, he took photographs to depict a representation of the truck as it appeared on June 2, 2020.

Detective Goss further testified that he found a purse or handbag on the passenger side of the vehicle and that, in the back bed of the truck, he found a bag with a Social Security card and two debit cards or two access-type devices all in the name of Timothy Michael Hamilton. Defense counsel cross-examined Detective Goss and asked him about the female passenger with Gamez. Detective Goss said she had told him the wallet containing the $70 was hers and that she was holding the money for Gamez. Defense counsel asked the detective if he found any other items inside that wallet to which Goss responded, "Nothing that I recall at this time." Later, defense counsel, referencing the debit and Social Security cards, asked: "Did you have contact with Mr. Hamilton"? Detective Goss responded, "I did not."

On September 8, deputy prosecutor Nate Olson testified in relation to the charging documents and court orders that had been filed in the case. Olson explained the purpose of the documents to the jury, and provided general definitions for "conditions of release" and "bail."

During trial, the May 2, 2022 order setting the trial date and other hearings was admitted as evidence. The State asked Olson what the "marking" above the

line placed over the word defendant said. Olson answered, "It appears to be a signature." The clerk's notes from June 27, 2022 were also admitted as exhibit 44. These notes set forth those people in attendance on the morning of June 27, 2022. Gamez was not listed in these and Olson testified that Gamez was not present in court on that day. The bench warrant, dated June 28, 2022 was admitted as exhibit 45. The State asked if Olson remembered why the court had not ordered a bench warrant on June 27. Olson testified:

> The court, from my recollection, wanted some further information
> about Mr. Gamez's failure to appear at that hearing and so set the
> case over for the parties to gather that information, provide further
> argument and information to the court on that June 28th . . . date.

During discussion of exhibit 45, defense counsel objected to the exhibit on the basis of relevance, and also that it was cumulative, because the court had already established Gamez's absence on June 27. The objection was overruled.

The jury was instructed on September 9, 2022. Instructions 17 and 18 listed the elements that the jury had to find proved beyond a reasonable doubt in order to convict Gamez of the crime of felony bail jumping.

> A person commits the crime of bail jumping when he or she
> fails to appear for trial as required after having been released by
> court order with knowledge of the requirement and after receiving
> written notice of the requirement of a subsequent personal
> appearance for trial before any court in this state.

Instruction 17.

> To convict the defendant of the crime of bail jumping as
> charged in Count 3, each of the following elements of the crime
> must be proved beyond a reasonable doubt:
>
> (1) That the defendant was charged with unlawful delivery of
> a controlled substance-heroin, a class B felony, and unlawful

6

delivery of a controlled substance-methamphetamine, a class B felony;

(2) That the defendant had been released by court order with knowledge of the requirement of a subsequent personal appearance before that court for trial;

(3) That the defendant had received written notice of the requirement of a subsequent personal appearance in court for trial on June 27, 2022;

(4) That on June 27, 2022, the defendant failed to appear before the court for trial as required; and

(5) That any of these acts occurred in the State of Washington.

Instruction 18.

The jury found Gamez guilty on all counts. At the sentencing hearing, Gamez was sentenced to a DOSA sentence of 90 months on counts 1 and 2.[2] The trial court found that Gamez had used a motor vehicle in the commission of a felony offense, referencing RCW 46.20.285(4). Gamez was also ordered to pay a $500 victim penalty assessment.

Gamez appeals.

II

Gamez first alleges that the amended information charging him with bail jumping is constitutionally deficient. This is so, he asserts, because the information is missing three of the essential elements of the crime. We agree.

A

When a challenge to the constitutional sufficiency of a charging document is raised for the first time on appeal, as is the case here, a reviewing court

---

[2] A "DOSA" sentence is a drug offender sentencing alternative.

applies the following two-step inquiry: (1) do the necessary facts appear in any form or by fair construction on the face of the charging document, and if so, (2) can the defendant show that he was nonetheless actually prejudiced?  State v. Kjorsvik, 117 Wn.2d 93, 105-106, 812 P.2d 86 (1991).

Under the Sixth Amendment and article I, section 22 of the Washington Constitution, charging documents must contain all of the essential elements of the charged crime.  State v. Pry, 194 Wn.2d 745, 751, 452 P.3d 536 (2019) (citing Kjorsvik, 117 Wn.2d at 97; State v. Vangerpen, 125 Wn.2d 782, 787, 888 P.2d 1177 (1995)).  If the necessary elements are not found or fairly implied in the charging document, then courts "presume prejudice and reverse without reaching the second prong and the question of prejudice."  Pry, 194 Wn.2d at 753.

It is not sufficient to have a "mere reference" to the statute in the charging document.  State v. Brown, 169 Wn.2d 195, 198, 234 P.3d 212 (2010).  "Merely citing to the proper statute and naming the offense is insufficient to charge a crime unless the name of the offense apprises the defendant of all of the essential elements of the crime."  Vangerpen, 125 Wn.2d at 787.  Specification of the crime being charged is necessary to establish the very illegality of the behavior charged.  State v. Zillyette, 178 Wn.2d 153, 158, 307 P.3d 712 (2013) (quoting State v. Ward, 148 Wn.2d 803, 811, 64 P.3d 640 (2003)). The purpose of requiring specificity is to inform the defendant of the nature of the alleged crime and allow the defendant to prepare a defense.  Zillyette, 178 Wn.2d at 158-59.

B

In analyzing Gamez's claims of error, we must first ask whether all of the necessary facts or, more specifically, the essential elements of the offense appear in any form or by fair construction on the face of the charging document. To do so, we look both to the statute setting forth the crime of bail jumping and to the information filed.

The amended information filed on June 27, 2022 lists two counts of unlawful delivery of a controlled substance and one count of bail jumping.[3] The bail jumping charge reads:

> That the said defendant, Jesse William Gamez, in the State of Washington, on or about June 27, 2022, having been charged with . . . a class B or class C felony, with the requirement of a subsequent personal appearance before a court of the State of Washington, did knowingly fail to appear as required.

Gamez sets forth three alleged defects in the language of the amended information, averring that two essential elements contained in the revised 2020 statute, and thus applicable in this case, are missing from the document: (1) *written notice* of the requirement to appear, and (2) failure to appear *for trial*. In addition, Gamez asserts that the information is also missing an essential element contained in both the old and new statutes: that the defendant *was released by court order or admitted to bail*. We agree in all respects.

Several years ago, the bail jumping statute was revised with an effective date of June 11, 2020. This statute differs from its predecessor in two

---

[3] The court clerk's file stamp indicates that the amended information was filed on the very day that Gamez failed to appear. Whether this quest for speed resulted in the lack of care evidenced by the defects in the information is not otherwise clear from the record.

No. 86172-7-I

substantive ways: in its reference to "has received written notice" and in its

requirement that the subsequent personal appearance be "for trial."

> (1) A person is guilty of bail jumping if he or she:
> (a) Is *released by court order or admitted to bail*, *has received written notice* of the requirement of a subsequent personal *appearance for trial* before any court of this state, and *fails to appear for trial* as required

RCW 9A.76.170 (1)(a) (emphasis added).

The former bail jumping statute criminalized bail jumping in pertinent part

as follows:

> (1) Any person having been *released by court order or admitted to bail* with knowledge of the requirement of a subsequent personal *appearance before any court* of this state . . . and who knowingly fails to appear or who knowingly fails to surrender for service of sentence as required is guilty of bail jumping.

Former RCW 9A.76.170(1) (2001) (emphasis added).

In the 2001 statute, a criminal felony was committed by failing to appear

for any court hearing with knowledge of that requirement. However, in the

revised 2020 statute, it is no longer a felony to fail to appear at any general court

hearing: instead it is a misdemeanor or gross misdemeanor.[4] In the current

statute, it is set forth that it is a felony to fail to appear after receiving "written

notice" of the requirement to appear and when the defendant does not appear

"for trial." Gamez was alleged to have failed to appear on June 27, 2022, which

---

[4] RCW 9A.76.190(3): Failure to appear or surrender is: (a) A gross misdemeanor if the person was held for, charged with, or convicted of a felony; or (b) A misdemeanor if the person was held for, charged with, or convicted of a gross misdemeanor or misdemeanor.

10

was after the amended statute took effect, but the charging document filed did not assert that he failed to appear for trial.

Here, the amended information charging Gamez is deficient because it does not set forth several of the essential elements of the crime of bail jumping. Thus, "[i]f the document cannot be construed to give notice of or to contain in some manner the essential elements of a crime, the most liberal reading cannot cure it." State v. Campbell, 125 Wn.2d 797, 802, 888 P.2d 1185 (1995). The State appears to have erroneously used language from the superseded 2001 statute rather than the applicable revised 2020 statute. Additionally, the information also omits one element common to both the prior version of the statute and the current version. The State has not met its burden of proving that the charging document was sufficient. Because the charging document does not include the three essential elements set forth above and these elements are not found or fairly implied on the face of the information, it is defective and we must presume prejudice. Pry, 194 Wn.2d at 753.

To further explain our decision, we next discuss each of the three defects in turn.

1

As to the element of having been released by court order or admitted to bail, Gamez is correct that this element is missing from the amended information filed herein. However, the State argues that this element can be "fairly implied" and "reasonably inferred" from the fact that he was arrested and charged with

two class B felonies, for which he was required to make a subsequent personal appearance. We disagree.

That the defendant was "released by court order or admitted to bail" is an essential element of both the former and current statute and, thus, should have been included in the charging document. See RCW 9A.76.170(1)(a). The face of the information does not contain a statement that Gamez was arrested, released by court order, or admitted to bail. It does not set forth facts referencing this. There is nothing on the face of the amended information that fairly implies these things. The State seeks to resort to information from sources other than the face of the information to sustain the validity of the charging document, but this does not comply with the applicable legal test. This element of felony bail jumping is not fairly implied on the face of the information and, thus, we must presume prejudice. Pry, 194 Wn.2d at 753. This defect alone supports reversal of the conviction.

2

As to the element of Gamez having been provided with "written notice," the State contends both that unwritten notice is sufficient and that because the information charged that Gamez "did knowingly fail to appear as required," it sufficed. Again, we disagree.

"Written notice" means "written notice." That the notice was "written" was important enough to the legislature that it added this requirement in the 2020 revisions to the statute. The legislature did not engage in a useless act by adding the requirement of "written notice."

The State seeks solace in the decision in <u>State v. Allen</u>, 176 Wn.2d 611, 628, 294 P.3d 679 (2013). But this solace is an apparent result of misunderstanding the holding therein. In <u>Allen</u>, the Supreme Court ruled that a "true" threat was not an essential element of harassment. Instead, "true" was a definitional term. And definitional terms need not be set forth in a charging document. <u>See</u> <u>State v. Johnson</u>, 180 Wn.2d 295, 302, 325 P.3d 135 (2014).

But "written notice" is the requirement itself. It is not a definitional term. The State's argument is unavailing.

Also failing is the State's contention that the information's allegation that Gamez "did knowingly fail to appear as required" suffices. Those words plainly do not allege, even by inference, the missing allegation of Gamez having received "written notice" of his obligation to appear for trial. Again, the State appears to urge us to look outside the face of the charging document to sustain the document's validity. This we cannot do.

This element of felony bail jumping is not fairly implied on the face of the information. Thus, we must presume prejudice. <u>Pry</u>, 194 Wn.2d at 753.

This defect alone supports reversal of the conviction.

3

Finally, we address the absent element of Gamez having failed to appear "for trial." This element was also added in the 2020 statutory revision. Gamez is correct that failing to appear "for trial" is an essential element and therefore was required to be alleged on the face of the charging document.

13

The State argues that "this element can be found on the face of the charging document." Br. of Resp't at 16. Not so.

First, the State urges that "[t]he charging document here alleges that [Gamez] was required to appear on June 27, 2022, and that he failed to do so. . . . Trial here was set for June 27, 2022, the same date he was alleged not to have appeared." Br. of Resp't at 16. But the State ignores the important fact: June 27, 2022 being the trial date is not anywhere set forth on the face of the amended information. No mention of any trial date appears anywhere on the face of the charging document. But the law commands that we look to the charging document. Pry, 194 Wn.2d at 752.

The State cannot cure its problem by seeking to alter the applicable legal test so as to allow the appellate court to look *outside* the charging document to determine that document's legal sufficiency. The State's argument falls flat.

The State next tries the same approach by referencing *trial testimony* to show that Gamez had actual notice. This entreaty also fails.

The State next cites to State v. Leach, 113 Wn.2d 679, 686, 782 P.2d 552 (1989), to suggest that the charging document need not repeat the exact language of the statute at issue. That much is true. The State claims that the language in the charging document herein, read as a whole, provided Gamez with sufficient notice of the crime he was alleged to have committed. By charging him in writing with "bail jumping," the State avers, Gamez was thereby informed of all of the crime's essential elements. We disagree.

14

In <u>Leach</u>, the defendant at issue was charged by complaint with "DWI." 113 Wn.2d at 695. The defendant appealed, alleging that the charging document was deficient because it did not explicitly charge the offense of "Driving While Intoxicated." <u>Leach</u>, 113 Wn.2d at 695.

The Supreme Court disagreed, ruling that "the letters 'DWI' have come into common usage as referring to 'driving while intoxicated,' a phrase which is a complete statement of the statutory elements constituting the offense charged under" the pertinent ordinance. <u>Leach</u>, 113 Wn.2d at 695.

The simple fact is that the <u>Leach</u> decision offers no support for the State's current argument. First, "bail jumping" does not fully describe all of the elements of that offense. While the word "bail" may possibly be in the "common usage," the word "jumping" to reference the missing elements herein is plainly not. In addition, the crime of DWI had no gradations. But the crime of bail jumping— based on that which is alleged and proved—can be a felony, a gross misdemeanor, or a misdemeanor. Nothing in the <u>Leach</u> decision saves the State from the requirement of providing "written notice" to the defendant.

Again, this essential element, "written notice," does not appear on the face of the document and cannot reasonably be inferred therefrom. Thus, we must presume prejudice. <u>Pry</u>, 194 Wn.2d at 753. Yet again, this defect supports reversal of the conviction.

For each or any of these deficiencies, reversal of the bail jumping conviction is required, as is remand to the trial court for dismissal of the charge without prejudice.

C

Gamez next asserts that he received ineffective assistance of counsel at trial. This is so, Gamez claims, because his attorney did not object to the admissibility of testimony concerning the existence of the three access devices located in the vehicle that Gamez was driving when he was arrested. He fails to establish an entitlement to appellate relief on this claim.[5]

1

The United States Constitution sets forth that "[i]n all criminal prosecutions, the accused shall . . . have the assistance of counsel for his defense." U.S. CONST. amend. VI. The Washington Constitution affords a similar guaranty. CONST. art. I, § 22. This right is not sufficient unless it is the right to "effective" counsel. McMann v. Richardson, 397 U.S. 759, 771, 90 S. Ct. 1441, 25 L. Ed. 2d 763 (1970).

The United States Supreme Court's decision in Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), provides the governing standards and principles applicable to claims of ineffective assistance of counsel. "Constitutionally ineffective assistance of counsel is established only when the defendant shows that (1) counsel's performance, when considered in light of all the circumstances, fell below an objectively reasonable standard of performance, and (2) there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different." State v.

---

[5] Gamez also asserts ineffective assistance of counsel in connection with his bail jumping conviction. Because we have reversed that conviction, his claim of ineffective assistance of counsel is moot.

Woods, 198 Wn. App. 453, 461, 393 P.3d 886 (2017) (citing Strickland, 466 U.S. at 687). Failure to satisfy either part of the analysis ends the inquiry. State v. Hendrickson, 129 Wn.2d 61, 78, 917 P.2d 563 (1996), overruled on other grounds by Carey v. Musladin, 549 U.S. 70, 127 S. Ct. 649, 166 L. Ed. 2d 482 (2006). The defendant bears the burden of demonstrating both deficient representation and prejudice. In re Det. of Hatfield, 191 Wn. App. 378, 401, 362 P.3d 997 (2015).

"Because the presumption runs in favor of effective representation, the defendant must show in the record the absence of legitimate strategic or tactical reasons supporting the challenged conduct by counsel." State v. McFarland, 127 Wn.2d 322, 336, 899 P.2d 1251 (1995). "[T]he presumption of adequate representation is not overcome if there is any 'conceivable legitimate tactic' that can explain counsel's performance." Hatfield, 191 Wn. App. at 402 (quoting State v. Reichenbach, 153 Wn.2d 126, 130, 101 P.3d 80 (2004)); see also State v. Grier, 171 Wn.2d 17, 33-34, 246 P.3d 1260 (2011); State v. Kyllo, 166 Wn.2d 856, 863, 215 P.3d 177 (2009). Prejudice is established when there is a reasonable probability that the outcome of the proceedings would have been different had counsel's performance not been deficient. McFarland, 127 Wn.2d at 337. Strickland reminds us that "advocacy is an art and not a science," and there are many ways to provide effective assistance. 466 U.S. at 681. "Even the best criminal defense attorneys would not defend a particular client in the same way." Strickland, 466 U.S. at 689.

A defendant asserting a claim that the defendant's trial counsel was constitutionally ineffective faces several hurdles. Legitimate trial strategy or tactics cannot serve as a successful basis for such a claim. Kyllo, 166 Wn.2d at 863. "A classic example of trial tactics is when and how an attorney makes the decision to object during trial testimony." State v. Vazquez, 198 Wn.2d 239, 248, 494 P.3d 424 (2021) (citing State v. Madison, 53 Wn. App. 754, 762-63, 770 P.2d 662 (1989)). Washington courts presume "that the failure to object was the product of legitimate trial strategy." State v. Johnston, 143 Wn. App. 1, 20, 177 P.3d 1127 (2007).

"Defense '[c]ounsel engages in . . . legitimate trial tactic[s] when foregoing an objection in circumstances when counsel wishes to avoid highlighting certain evidence.'" Vazquez, 198 Wn.2d at 248 (alterations in original) (quoting State v. Crow, 8 Wn. App. 2d 480, 508, 438 P.3d 541 (2019)). Moreover, if the defendant centers the claim of ineffective assistance of counsel on trial counsel's failure to object, then the defendant must show that the objection would likely have succeeded. Vazquez, 198 Wn.2d at 248. Indeed, "'[o]nly in egregious circumstances, on testimony central to the State's case, will the failure to object constitute incompetence of counsel justifying reversal.'" Vazquez, 198 Wn.2d at 248 (quoting Crow, 8 Wn. App. 2d at 508).

2

Here, Gamez asserts that defense counsel was constitutionally deficient when he did not interpose an objection to the evidence that he contends led the

18

jury to believe that he had a propensity to commit crimes. Thus, Gamez avers, his counsel should have objected pursuant to ER 404(b).

The evidence at issue was two access devices (debit cards) and a Social Security card that did not belong to Gamez and that were found during a search of the vehicle Gamez was driving at the time of his arrest. The cited rule provides that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." ER 404(b).

During Detective Goss's testimony, the State introduced photographs of the debit and Social Security cards and questioned Detective Goss about where they were found. Defense counsel did not object to the testimony about or to the introduction of the exhibits and, Gamez contends, his counsel should have done so. This is so, he asserts, because the existence of these items was unrelated to the accusation of drug sales and bail jumping. Thus, Gamez alleges, the testimony and photos were only admitted to demonstrate Gamez's propensity for committing crimes.

However, the record herein shows that this evidence was not used as propensity evidence. Moreover, it is also not shown that an objection would have been sustained. In addition, defense counsel questioned the detective in such a way as to raise questions about the thoroughness of the investigation, including whether the detective followed up with the owner of the devices. The detective

admitted that he did not. Furthermore, by not objecting, defense counsel downplayed, rather than highlighted, the evidence. In addition, by not objecting, he removed any incentive the prosecution might have to locate and call as a witness the owner of the devices. In a trial in which there was otherwise no victim testimony, this thought could well have been on a competent attorney's mind.

We elaborate on this analysis as follows. First, there was no evidence presented during trial that the access devices were stolen. Gamez's present assertion that the debit cards and Social Security card were "potentially stolen" is not borne out or set forth in the record, and the State did not present any proof of this fact at trial.

When Detective Goss testified, Exhibits 13-21, consisting of photographs of the truck driven by Gamez and the truck's contents, were offered into evidence. Defense counsel did not object when the exhibits were offered by the State to show a "fair and accurate representation of the truck as it appeared" during and after the detective's search. One was a photo of a handbag that was found on the passenger side of the vehicle. The detective testified that he also found a white wallet with the $70 of marked bills used in the drug deal. Also found in the back of the truck were two debit cards (access devices) and a Social Security card in the name of Timothy Michael Hamilton. The detective confirmed the precise location of where the cards were found and stated, "I had kind of forgotten about [them]."

On cross-examination, defense counsel asked Detective Goss if he knew the name on the debit and Social Security cards and if he had contacted that individual. The detective said no, that he had not contacted the cards' owner.

Second, related exculpatory information was presented during Detective Goss's trial testimony. Goss testified that during his postarrest interview with Gamez, he had questioned Gamez about the debit cards and Social Security card found in the back of the truck. Detective Goss testified that Gamez had said he had found them and did not plan to use them for any illegal purpose or for any other reason. There was no evidence introduced that tended to prove or suggest that the devices were used in the drug deals alleged in counts 1 and 2 or in connection with any criminal acts. Thus, Gamez fails to show that the devices were utilized in any way to prove his character or his propensity to commit crimes.

Moreover, it is objectively reasonably conceivable that defense counsel did not want to draw attention to the access devices in front of the jury. Not highlighting possibly unfavorable evidence is a widely recognized trial strategy. During cross-examination, defense counsel asked Detective Goss if he had contacted the owner of the devices. The detective said no. Thus, it is also conceivably an objectively reasonable tactic that defense counsel wanted the opportunity to ask the detective about his lack of follow-through on the matter, potentially signaling to the jury that the detective had not undertaken a thorough investigation.

21

Finally, the prosecutor did not, during closing argument, urge the jury to consider the location of the devices upon their discovery as evidence of Gamez's criminal propensities. In short, there was no propensity argument made by the State. It is not established that the jury interpreted the introduction of the evidence as an indication of Gamez's criminal propensities. Gamez does not establish that an objection would have been sustained. He establishes neither deficient performance nor resulting prejudice. His claim of ineffective assistance of counsel fails.

D

The State concedes that the trial court erred at sentencing when it applied the superseded version of RCW 46.20.285 instead of the 2022 amended statute. The amended statute concerns the revocation of a convicted person's driver's license. RCW 46.20.285(4) is applied to "[a]ny felony where the sentencing court determines that in the commission of the offense a motor vehicle was used in a manner that endangered persons or property." In this case, Gamez's motor vehicle was not used in a manner that endangered persons or property. This revised motor vehicle license revocation statute sets forth a remedial sanction and not a criminal punishment. See City of Spokane v. Wilcox, 143 Wn. App. 568, 572, 179 P.3d 840 (2008); accord State v. Dykstra, 127 Wn. App. 1, 13, 110 P.3d 758 (2005). Therefore, it was applicable at the time of sentencing. State v. Pillatos, 159 Wn.2d 459, 473, 150 P.3d 1130 (2007). The trial court erred by not applying it.

On remand, the trial court should apply the correct statute.

E

In regard to the $500 victim penalty assessment imposed on Gamez, the State concedes that the trial court erred at sentencing when it assessed this fee against Gamez. Because Gamez was indigent at the time of sentencing and remains indigent while on appeal, he is entitled to have the requirement vacated on remand. See State v. Ellis, 27 Wn. App. 2d 1, 16-17, 530 P.3d 1048 (2023). On remand, we direct the trial court to do so.

III

The bail jumping conviction is reversed and the matter is remanded to the trial court with direction to dismiss the charge without prejudice.

The two convictions for unlawful delivery of a controlled substance are affirmed.

The sentencing finding with regard to use of a motor vehicle in the commission of a crime is reversed and the matter is remanded to the trial court for further proceedings.

The imposition of the victim penalty assessment is reversed and the matter is remanded to the trial court with directions to vacate this requirement.

Affirmed in part, reversed in part, and remanded.

No. 86172-7-I

WE CONCUR:

Feldman, J.          Birk, J.