# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON, | DIVISION ONE |
| Respondent, | No. 85532-8-I |
| v. | UNPUBLISHED OPINION |
| KAZ AIRK JOSHUA MCKENZIE, | |
| Appellant. | |

DWYER, J. — Kaz McKenzie appeals from the judgment and sentence entered on a jury's verdict convicting him of one count of failure to register as a sex offender, charged as a class B felony sex offense. On appeal, McKenzie asserts that he received ineffective assistance of counsel because his attorney stipulated to certain undisputed facts regarding his felony conviction history. He also asserts that the sentencing court erred in imposing a victim penalty assessment (VPA) and a certain discretionary community custody provision against him. McKenzie's ineffective assistance of counsel claim fails to establish an entitlement to appellate relief. However, his sentencing contentions have merit. Accordingly, we affirm McKenzie's convictions, but remand for the sentencing court to strike certain terms and conditions from his sentence.[1]

---

[1] In a pro se statement of additional grounds, McKenzie presents several additional bases which, he contends, warrants reversal of his conviction. As discussed, infra, none of these contentions have merit.

I

In 1993, McKenzie was charged and convicted as a juvenile in Snohomish County for the crime of attempted indecent liberties, a felony sex offense. This conviction required him to register as a sex offender with a county sheriff's office.

Eight years later, McKenzie, as an adult, was charged and convicted in Skagit County for the crime of failure to register as a sex offender, a felony offense. The next year, he was again charged and convicted in Skagit County for failing to register as a sex offender, charged as a felony sex offense in light of his prior conviction for the same offense.[2] Then, five years later, again in Skagit County, he was charged and convicted of rape of a child in the third degree, another felony sex offense, again requiring him to register as a sex offender.

Nearly 13 years later, in April 2020, McKenzie moved to Island County and registered with the county's sheriff's office, indicating that he was living at an address in Coupeville. He was provided with sex offender notification and registration requirements, including those that would apply in the event that he became homeless. He signed a form confirming that he had received a copy of those requirements. One week later, he submitted a change of address form indicating that he was moving to a different address in Coupeville.

Four months later, in August 2020, McKenzie informed the county sheriff's office that he had become homeless and that he was registering his address in that county as transient. He was informed that, as a registered sex offender with

---

[2] RCW 9.94A.030 defines "[s]ex offense" to include "[a] felony violation of RCW 9A.44.132(1) (failure to register as a sex offender) if the person has been convicted of violating RCW 9A.44.132(1) (failure to register as a sex offender) or 9A.44.130 prior to June 10, 2010, on at least one prior occasion." RCW 9.94A.030(47)(a)(v).

a transient address, he was required to report to the county sheriff's office on a weekly basis. Then, each week for the next three weeks, between August 18 and September 1, McKenzie reported to the county sheriff's office.

On September 8, McKenzie was scheduled to report to the county sheriff's office. He did not do so. One week later, on September 15, he was again scheduled to report to the sheriff's office. He again did not do so.

Two days later, the county sheriff's office e-mailed him informing him that, by failing to report, he was out of compliance with the sex offender registration requirements. He responded to the e-mail, confirming its receipt but not providing additional information. Thereafter, during the time in question, he did not contact the county sheriff's office to update his residential status or indicate to that sheriff's office that he had registered with another county.

The State later charged McKenzie with one count of failure to register as a sex offender, alleging that he had a prior conviction for a felony sex offense requiring him to register as a sex offender, that he had knowingly failed to register as a sex offender, and that he had two prior convictions of failure to register as a sex offender.[3] These allegations elevated the charged offense to a class B felony.

Prior to trial, a document containing a waiver and stipulation to certain facts regarding McKenzie's history of convictions was prepared. The document's waiver section indicated that McKenzie understood that he has "the right to have a jury determine, beyond a reasonable doub[t], whether the State has

---

[3] RCW 9A.44.128, .130, .132(1)(b).

3

established" that he had one prior conviction of attempted indecent liberties, two prior convictions of failure to register as a sex offender, and one prior conviction of rape of a child in the third degree. The waiver section further indicated that McKenzie, after consulting with counsel, wished to waive that right and wished to agree to the stipulation section of the document. McKenzie inscribed his signature on the page containing the waiver section.

The document's stipulation section reads as follows:

**STIPULATION**
The parties have agreed that certain facts are true.
You must accept as true that the person before the court, who has been identified in the charging document as Defendant, Kaz Airk Joshua McKenzie, was convicted on March 14, 1994, of Attempted Indecent Liberties, a felony sex offense that was committed on April 7, 1993, in Snohomish County Superior Court Cause No. 93-8-01300-1.
You must accept as true that the person before the court, who has been identified in the charging document as Defendant, Kaz Airk Joshua McKenzie, was convicted on August 16, 2001, of Failure to Register as a Sex Offender, a felony offense that was committed on April 3, 2001, in Skagit County Superior Court Case No. 01-1-00194-8.
You must accept as true that the person before the court, who has been identified in the charging document as Defendant, Kaz Airk Joshua McKenzie, was convicted on May 30, 2002, of Failure to Register as a Sex Offender, a felony sex offense that was committed on February 19, 2002, in Skagit County Superior Court Case No. 02-1-00134-2.
You must accept as true that the person before the court, who has been identified in the charging document as Defendant, Kaz Airk Joshua McKenzie, was convicted on [June 14, 2007], of Rape of a Child in the Third Degree, a felony sex offense that was committed on September 8, 2006, in Skagit County Superior Court Case No. 06-1-00595-2.
The stipulation is to be considered evidence only of the prior conviction element(s). You are not to speculate as to the nature of the prior conviction(s). You must not consider the stipulation for any other purpose.

(Alteration in original.) McKenzie, his legal counsel, and the prosecutor each inscribed their respective signatures on the page containing the stipulation section.

Thereafter, at a hearing immediately prior to trial, the following exchange occurred:

> [PROSECUTOR]: Your Honor, this is a – a stipulation that's been drafted largely based off of the standard issue Washington [Pattern] Instruction 4.78, includes a list of four convictions, three of which are sex offenses, one of which is not; but it is a prior conviction of failure to register as a sex offender.
> . . . .
> [DEFENSE COUNSEL]: Your Honor, it's our intention to introduce the stipulation as-is.
> THE COURT: I have reviewed the stipulation after it was handed up earlier in this hearing and do accept the stipulation as presented. It does appear to conform to both our Court rules and the Court understands the reason why this is appropriate and the defense position on necessary procedure. So I'll accept that stipulation.
> [PROSECUTOR]: Your Honor, I think I – I think I do have to ask the Court to engage in an on-the-record colloquy with Mr. McKenzie in particular to make sure that he is making a knowing, intelligent, and voluntary waiver.
> . . . .
> But there may be a reason that Mr. McKenzie might prefer to use the Judgment and Sentences. So I am going to ask the Court to make sure that Mr. McKenzie is making a knowing, intelligent, and voluntary waiver of stipulation.
> THE COURT: All right. Thank you, [prosecutor]. Mr. McKenzie, I've been provided with a stipulation that appears to bear your signature. It's dated the 23rd day of May, today. Did you have a chance to go over the stipulation with [defense counsel]?
> [McKENZIE]: I have, Your Honor.
> THE COURT: You understand that you could require the State to prove each and every one of these offenses as part of their obligation to prove the elements of the crime?
> [McKENZIE]: I understand that, Your Honor. I'm okay with the stipulation.

THE COURT: The stipulation articulates the prior convictions that are identified there in the second page. Have you had a chance to review that language to make sure it's accurate?

[McKENZIE]: One of the dates for an actual commission of the crime, the one for the Third Degree Rape of a Child, is inaccurate. I do not debate that the crime happened and I was convicted of it. So . . .

THE COURT: Did anyone make any threats to you or promises to you that if you didn't accept the stipulation, that bad things would happen or things of that nature?

I know that might sound a little simplistic, but the Court does have to make a finding that this is a freely and voluntarily made stipulation.

It sounds to me as though you certainly understand the content and the purpose of it.

[McKENZIE]: I do, Your Honor. It's freely given.

THE COURT: Well, I am satisfied that – that Mr. McKenzie does understand the nature of what the stipulation is about, and that he does acknowledge that the State could be required to prove these offenses through independent evidence; but that the stipulation is something that he has freely and voluntarily and knowingly entered into with the advice of his attorney.

I don't see any other conclusion that the Court could reach frankly. And I see that the date has been changed on the one charge from June 1, 2005 to June 14, 2007. Is that the correct date?

[McKENZIE]: Correct date for conviction, yes.

THE COURT: All right.

A two-day trial followed. The State's theory of the case was that McKenzie had the requisite conviction history, that he had previously registered weekly as a sex offender with a transient address from mid-August to early September 2020, and that he failed to do so on two occasions in September 2020. McKenzie's attorney's theory of the case, for his part, was that the State had not met its burden to establish beyond a reasonable doubt that McKenzie had knowingly failed to register on the dates in question.[4] During the State's

---

[4] McKenzie's legal counsel waived making an opening statement.

case in chief, the court clerk read the foregoing stipulation out to the jury and the State called an Island County Sheriff's Office deputy as its only witness.

After each party rested its case, the trial court issued its instructions to the jury. These instructions included instruction 16, which reiterated the stipulation previously read to the jury. Instruction 16 included the admonition that "[t]he stipulation is to be considered evidence only of the prior conviction element(s). You are not to speculate as to the nature of the prior conviction(s). You must not consider the stipulation for any other purpose."

The jury returned a verdict finding McKenzie guilty of the charged count of failure to register as a sex offender. The jury also returned a special verdict form answering "yes" to the question: "Was the defendant previously convicted on at least two occasions of the crime of felony Failure to Register as a Sex Offender?"

At sentencing, McKenzie's counsel indicated that, for the purpose of sentencing, McKenzie did not dispute his criminal history. The court imposed a 50-month term of confinement along with a 36-month term of community custody. The court also imposed, as pertinent here, a $500 VPA pursuant to RCW 7.68.035, and a community custody provision that read as follows: "the defendant shall . . . (5) not unlawfully possess controlled substances while on community custody."

McKenzie now appeals.

II

McKenzie asserts that his legal counsel rendered ineffective assistance by stipulating to certain facts regarding his felony conviction history. We disagree.

7

A

The federal constitution sets forth that "[i]n all criminal prosecutions, the accused shall . . . have the assistance of counsel for his defense."  U.S. CONST. amend. VI.  Our state constitution affords a similar guaranty.  CONST. art. I, § 22.

A defendant's right to assistance of counsel for his defense is the right to "effective" counsel.  McMann v. Richardson, 397 U.S. 759, 771, 90 S. Ct. 1441, 25 L. Ed. 2d 763 (1970).  The governing standard for a claim of ineffective assistance of counsel is set forth in the United States Supreme Court's decision in Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).  We have described the Strickland standard as follows:

> Constitutionally ineffective assistance of counsel is established only when the defendant shows that (1) counsel's performance, when considered in light of all the circumstances, fell below an objectively reasonable standard of performance and (2) there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different.

State v. Woods, 198 Wn. App. 453, 461, 393 P.3d 886 (2017) (citing Strickland, 466 U.S. at 687).

The defendant bears the burden of establishing both prongs of the Strickland test, that is, deficient representation and prejudice arising therefrom. In re Det. of Hatfield, 191 Wn. App. 378, 401, 362 P.3d 997 (2015).  Accordingly, a defendant's failure to establish either prong of the test ends the inquiry and is fatal to the claim of ineffective assistance of counsel.  Strickland, 466 U.S. at 687; State v. Hendrickson, 129 Wn.2d 61, 78, 917 P.2d 563 (1996).

8

B

McKenzie asserts that he received ineffective assistance of counsel because no legitimate trial tactic underlay his attorney's decision to stipulate to certain facts of his felony conviction history. We disagree.

1

"'Courts engage in a strong presumption [that] counsel's representation was effective.'" Hatfield, 191 Wn. App. at 401 (alteration in original) (quoting State v. McFarland, 127 Wn.2d 322, 335, 899 P.2d 1251 (1995)). Therefore, by bearing the burden of establishing deficient performance, "the defendant must show in the record the absence of legitimate strategic or tactical reasons supporting the challenged conduct by counsel." McFarland, 127 Wn.2d at 336. "[T]he presumption of adequate representation is not overcome if there is any 'conceivable legitimate tactic' that can explain counsel's performance." Hatfield, 191 Wn. App. at 402 (quoting State v. Reichenbach, 153 Wn.2d 126, 130, 101 P.3d 80 (2004)); see also State v. Grier, 171 Wn.2d 17, 33-34, 246 P.3d 1260 (2011); State v. Kyllo, 166 Wn.2d 856, 863, 215 P.3d 177 (2009).

Strickland reminds us that "advocacy is an art and not a science," and there are many ways to provide effective assistance. 466 U.S. at 681. "Even the best criminal defense attorneys would not defend a particular client in the same way." Strickland, 466 U.S. at 689.

2

McKenzie asserts that his counsel's stipulation to certain facts of his history of felony convictions was not a legitimate trial tactic because his counsel

9

could have obtained a more favorable stipulation from the State.  McKenzie's assertion is predicated on an erroneous assumption that the State, in prosecuting its case that McKenzie had committed class B felony failure to register as a sex offender, was not entitled to do so in the manner that it saw fit.  Therefore, as discussed below, McKenzie's assertion that his counsel's performance was deficient for failing to compel a more favorable stipulation from the State fails.

i

"[T]he prosecution is generally entitled to prove its case by evidence of its own choice in order to present its case with full evidentiary force."  State v. Taylor, 193 Wn.2d 691, 698, 444 P.3d 1194 (2019) (citing Old Chief v. United States, 519 U.S. 172, 186-87, 117 S. Ct. 644, 136 L. Ed. 2d 574 (1997)).  A stipulation, for its part,

> "is an express waiver that concedes, for purposes of trial, the truth of some alleged fact, with the effect that one party need offer no evidence to prove it and the other is not allowed to disprove it."
> State v. Case, 187 Wn.2d 85, 90, 384 P.3d 1140 (2016).  As a general rule, the State is not required to accept a defendant's offered stipulation regarding an element of the crime charged.  See State v. Brett, 126 Wn.2d 136, 159, 892 P.2d 29 (1995).  In addition,
>> "[T]he State is not automatically precluded from presenting its evidence on an issue merely because the defendant offers a stipulation. . . .  If the State does not agree to the stipulation, the issue remains open and the State can proceed to prove its case in the manner that it sees fit."
> State v. Pirtle, 127 Wn.2d 628, 652, 904 P.2d 245 (1995) (alterations in original).

Taylor, 193 Wn.2d at 697.

According to the Supreme Court, "[t]he 'reason for the rule is to permit a party "to present to the jury a picture of the events relied upon. To substitute for such a picture a naked admission might have the effect to rob the evidence of much of its fair and legitimate weight."'" Old Chief, 519 U.S. at 187 (quoting Parr v. United States, 255 F.2d 86, 88 (1958) (quoting Dunning v. Maine Cent. R. Co., 91 Me. 87, 39 A. 352, 356 (1897))). As the Court explained,

> the prosecution may fairly seek to place its evidence before the
> jurors, as much to tell a story of guiltiness as to support an
> inference of guilt, to convince the jurors that a guilty verdict would
> be morally reasonable as much as to point to the discrete elements
> of a defendant's legal fault. . . .
> . . . .
> . . . A convincing tale can be told with economy, but when economy
> becomes a break in the natural sequence of narrative evidence, an
> assurance that the missing link is really there is never more than
> second best.

Old Chief, 519 U.S. at 188-89. Therefore, as a general matter, a "'defendant may not stipulate or admit his way out of the full evidentiary force of the case as the Government chooses to present it.'" Taylor, 193 Wn.2d at 702 (quoting Old Chief, 519 U.S. at 186-87).

ii

There is a narrow exception to this general rule recognized by the United States Supreme Court in Old Chief. Our Supreme Court in Taylor recently described the Court's reasoning in Old Chief as follows.[5]

> In Old Chief, the defendant was charged with violating a federal
> statute that prohibited possession of a firearm by anyone with a
> prior felony conviction. Id. at 174. Prior to trial, the defendant

---

[5] Neither McKenzie nor the State cite to our Supreme Court's instructive decision in Taylor.

11

offered to stipulate that he had been convicted of a qualifying felony. Id. at 175. The defendant "argued that the offer to stipulate to the fact of the prior conviction rendered evidence of the name and nature of the offense inadmissible under Rule 403 of the Federal Rules of Evidence, the danger being that unfair prejudice from that evidence would substantially outweigh its probative value." Id. The prosecution refused to join in the stipulation, seeking to admit the order of judgment for the defendant's prior conviction into evidence. Id. at 177. The trial court admitted the order of judgment, and the jury returned a guilty verdict. Id.

The Supreme Court reversed the defendant's conviction, holding that a trial court abuses its discretion under Federal Rule of Evidence 403 when it rejects a defendant's offer to stipulate to the fact of a prior felony conviction to prove his or her felon status in a felon-in-possession prosecution. Id. at 174. Significantly, the Court was careful to limit its holding to "cases involving proof of felon status." Id. at 183 n.7. The Court reasoned that the trial court's decision to reject the defendant's offer to stipulate and admit the order of judgment amounted to an abuse of discretion because the danger of unfair prejudice substantially outweighed the order of judgment's probative value. Id. at 191.

The Court noted that the prosecution is generally entitled to prove its case by evidence of its own choice in order to present its case with full evidentiary force. Id. at 186-87. However, the Court determined that this general rule has "virtually no application when the point at issue is a defendant's legal status, dependent on some judgment rendered wholly independently of the concrete events of later criminal behavior charged against him." Id. at 190. The Court reasoned that the prosecution was required to prove only that the defendant's prior conviction fell within a broad category of qualifying felonies. Id. at 190-91. As a result, there was no appreciable difference in the evidentiary value of a stipulation to a qualifying felony and admission of the official record of that felony. Id. at 191. Moreover, the Court highlighted that "proof of the defendant's [felon] status goes to an element entirely outside the natural sequence of what the defendant is charged with thinking and doing to commit the current offense." Id.

Taylor, 193 Wn.2d at 697-99.

Our Supreme Court noted that

Washington courts have adopted the exception recognized in Old Chief and applied it to our state's identical evidence rule, ER 403. See [State v. ]Johnson, 90 Wn. App. [54, ]63[, 950 P.2d 981 (1998)]; State v. Garcia, 177 Wn. App. 769, 777-78, 313 P.3d 422

> (2013). However, *Washington courts have not yet expanded the Old Chief rationale beyond the admission of prior convictions in felon-in-possession prosecutions.* See State v. Ortega, 134 Wn. App. 617, 624-25, 142 P.3d 175 (2006) (expressing doubt as to whether Old Chief extends to the admission of prior violation of a protection order convictions).

Taylor, 193 Wn.2d at 699 (emphasis added). Therefore, the court recognized that the exception identified in Old Chief has been applied only to proof of prior convictions in felon-in-possession prosecutions and has not been expanded beyond such a prosecution. Taylor, 193 Wn.2d at 699.

Turning to the matter at issue in Taylor, the State had sought to prosecute the defendant therein for violation of a no-contact order. The defendant had offered to stipulate to the existence of the underlying no-contact order and his knowledge of that order. The question before the court was whether the rationale in Old Chief required the State to accept the defendant's offered stipulation. Taylor, 193 Wn.2d at 695.

The court recognized that the defendant therein was, in effect, requesting to expand the Court's rationale in Old Chief to the matter before it. The court declined the defendant's request.

> Many of the concerns the Supreme Court highlighted in Old Chief are absent in felony violation of a no-contact order prosecutions. First, the Old Chief Court determined that the danger of unfair prejudice substantially outweighs the probative value of a prior felony conviction in part because a prior conviction involves actions independent of a felon-in-possession offense and is offered to prove that a defendant committed a general qualifying felony. But in a felony violation of a no-contact order case, the defendant is charged with violating the very no-contact order sought to be admitted. What's more, the State must show that the defendant violated a specific provision of that particular no-contact order. Accordingly, a no-contact order is closely related to a felony violation of a no-contact order charge, and the probative value of

13

introducing that no-contact order into evidence is greater than the probative value of showing a general felony conviction in Old Chief.

Additionally, while the Old Chief Court decided that the general rule that the prosecution can present evidence of its own choosing does not apply "when the point at issue is a defendant's legal status," 519 U.S. at 190, a no-contact order establishes more than mere status.  A domestic violence no-contact order provides the date the order was entered, the order's expiration date, the protected party, the specific restrictions on contact between the defendant and the protected party, that consent cannot be used as a defense, and that the defendant knows of the order's existence and its contents.  The introduction of a no-contact order provides evidence of multiple elements of a felony violation of a no-contact order charge and allows the State to present the jury with a full narrative of the events leading to the charged offense.  Even the Old Chief Court recognized that "the prosecutor's choice will generally survive a Rule 403 analysis when a defendant seeks to force the substitution of an admission for evidence creating a coherent narrative of his thoughts and actions in perpetrating the offense for which he is being tried."  Id. at 192.

Moreover, the Supreme Court concluded in Old Chief that a defendant's offered stipulation to a qualifying felony conviction is equivalent to the prosecution's order of judgment for that felony.  But the same cannot be said here.  To prove Taylor's felony violation of a no-contact order charge, the State was required to prove that there was a no-contact order in place that applied to Taylor, as well as that he knew of the order, violated a provision of the order, and committed an assault.  See RCW 26.50.110(1), (4).  Taylor offered to stipulate that a no-contact order was in place and that he knew of the order, but his offered stipulation was insufficient in comparison to the no-contact order itself.  By introducing the no-contact order, the State was able to show that a valid no-contact order was in place and the specific restrictions of the order Taylor violated.  Excluding the no-contact order from evidence would allow Taylor to circumvent the full evidentiary force of the State's case.  See Old Chief, 519 U.S. at 186-87 (stating that a "defendant may not stipulate or admit his way out of the full evidentiary force of the case as the Government chooses to present it.").  Because the admission of prior felony convictions in felon-in-possession prosecutions is distinguishable from the admission of domestic violence no-contact orders, we decline to apply Old Chief here.

Taylor, 193 Wn.2d at 700-02.  Therefore, the court, for several reasons, declined

to extend the rationale in Old Chief applicable to proof of "felon" status for a

felon-in-possession prosecution to proof of a no-contact order for a violation of a no-contact order prosecution.

iii

Here, in attempting to establish that his counsel could have compelled the State to stipulate to a more favorable presentation of his conviction history to the jury, McKenzie requests that we extend the rationale in <u>Old Chief</u> to proof of his prior felony convictions in a prosecution of class B felony failure to register as a sex offender.   Because <u>Old Chief</u> is distinguishable, we decline McKenzie's request.

The statute setting forth the charged offense in this matter reads as follows:

> (1) A person commits the crime of failure to register as a sex offender *if the person has a duty to register under RCW 9A.44.130 for a felony sex offense* and knowingly fails to comply with any of the requirements of RCW 9A.44.130.
>     . . . .
>         (b) If a person has a duty to register under RCW 9A.44.130(1)(a) and *has been convicted of a felony failure to register as a sex offender in this state* . . . *on two or more prior occasions*, the failure to register under this subsection is a class B felony.

RCW 9A.44.132 (emphasis added).

RCW 9A.44.130, for its part, provides that

> Any adult residing whether or not the person has a fixed residence . . . *who has been found to have committed or has been convicted of any sex offense* . . . shall register with the county sheriff for the county of the person's residence, . . . or as otherwise specified in this section.

RCW 9A.44.130(1)(a) (emphasis added).

15

Accordingly, in a prosecution under that statute, the State would be required to prove that a defendant had a duty to register as a sex offender, that such a duty arose from the defendant being previously convicted of a felony sex offense, that such duty was in effect during the time in question, that the defendant knowingly failed to comply with the applicable sex offender registration requirements, that the defendant had been previously convicted of a felony failure to register as a sex offender on two or more occasions, and that such convictions had occurred in this state. See RCW 9A.44.130, .132(1)(b).

We conclude, as our Supreme Court did in Taylor, that many of the concerns highlighted by the Court in Old Chief are not present in proof of prior conviction evidence in a prosecution of class B felony failure to register as a sex offender. As an initial matter, in such a prosecution, a defendant's general stipulation to having been previously convicted of a felony sex offense and twice or more times of felony failure to register as a sex offender does not carry the same evidentiary weight as, for instance, a prosecutor's orders of judgment and sentence as to those convictions. Indeed, an order of judgment for each of those convictions would be additionally probative of the fact that the defendant was convicted in Washington state (or another location as recognized by that statute), that the defendant's duty to register was in effect at the time in question, and that the defendant had previously been convicted on two or more occasions of the failure to register offenses, all of which are required to prove the offense in question. A defendant's mere stipulation to the existence of these prior convictions, without more, would not be probative of such facts. Therefore, for

16

the purpose of the charged offense at issue, a defendant's general stipulation to prior convictions would not have equivalent probative value to the evidence that the State could otherwise offer, evidence which would be highly probative of certain elements of the charged offense. See Taylor, 193 Wn.2d at 701-02.

Furthermore, proof of a prior felony sex offense conviction and proof of prior felony failure to register as a sex offender convictions establish more than a defendant's "legal status" for the purpose of a class B felony failure to register as a sex offender prosecution. Indeed, unlike the limited probative value of proof of a general "felon" status in Old Chief, proof of an applicable felony sex offense conviction also establishes a defendant's duty to register as a sex offender, making the underlying felony sex offense more closely related to the events leading up to the defendant's failure to register as required. See Taylor, 193 Wn.2d at 701.

Proof of a defendant's two or more prior felony failure to register as a sex offender convictions also establishes more than legal status: such proof is the predicate for elevating the offense at issue from a class C felony to a class B felony. This suggests that, in enacting such a framework, our legislature not only focused on a defendant's legal status as to a particular crime of conviction but also intended to authorize the State to charge a more serious offense for a recidivist defendant who repeatedly fails to register as a sex offender. Thus, a defendant's mere stipulation to applicable prior conviction history would deprive the State of the ability to present a jury with a full narrative of the events leading to the charged offense. See Taylor, 193 Wn.2d at 701.

Lastly, in the context of a prosecution for class B felony failure to register as a sex offender, the probative value of the evidence that the State could introduce, when compared to a defendant's prior convictions stipulation, is not substantially outweighed by the potential for unfair prejudice. Indeed, if the State were to introduce orders entering judgment and sentence on a defendant's convictions, such evidence would, as discussed above, be probative of not only the prior conviction elements, but also where and when the defendant was convicted of those offenses, all of which would be necessary for the State to prove in such a prosecution. Therefore, unlike in Old Chief, we cannot say that any unfair prejudice that may arise from the State's introduction of, for instance, a defendant's judgment and sentence orders would substantially outweigh such orders' probative value. See Taylor, 193 Wn.2d at 701. Given all of that, Old Chief is distinguishable from the matter before us and we decline to extend it to the context of a prosecution for class B felony failure to register as a sex offender.

Accordingly, the State was entitled to prosecute its case against McKenzie as it saw fit and could not be compelled to stipulate to McKenzie's prior convictions on McKenzie's proposed terms. Therefore, McKenzie's counsel did not have the ability to compel the State to agree to a more favorable felony conviction stipulation. Given that, McKenzie's counsel's performance was not deficient for failing to do that which the attorney had no ability to do. Thus, McKenzie's assertion of deficient representation fails.

3

McKenzie nevertheless contends that there was no legitimate trial tactic underlying his attorney's decision to stipulate to his history of convictions. We disagree.

As set forth above, the parties reached an agreement to stipulate to certain undisputed facts pertaining to his history of convictions. McKenzie, as evidenced by his signature to the waiver and stipulation document and his colloquy with the trial court, did not dispute the history of his convictions set forth in the stipulation. Therefore, the remaining disputed issues for trial were whether McKenzie had failed to register as a sex offender in September 2020 and whether he had done so knowingly. At trial, McKenzie's attorney, in cross-examining the State's only witness and in closing argument, argued that the State had failed to carry its burden of proof beyond a reasonable doubt as to those remaining disputed issues.

We can conceive that McKenzie's counsel's decision to stipulate to his history of convictions was a legitimate trial tactic that formed part of his larger defense strategy in response to the State's case against his client. Indeed, the record suggests that McKenzie's counsel's trial strategy was to focus the attention of the jury squarely on the disputed elements of the charged offense and whether the State had carried its burden of proof at trial.

McKenzie's decision to stipulate to the undisputed elements of the charged offense was a legitimate tactic not only limiting the persuasive weight of the State's case in chief but also giving effect to his counsel's larger trial strategy.

Given that the parties did not dispute the pertinent facts of McKenzie's felony conviction history, obtaining the State's consent to stipulate to those facts caused the State to not present such evidence to the jury through other—perhaps more persuasive—means, such as exhibits of prior orders entering judgment and sentence on those convictions or witness testimony, in the course of its case in chief. Obtaining the State's agreement to stipulate when such a stipulation avoided a circumstance in which the State would have otherwise had an opportunity to present persuasive evidence worked to McKenzie's benefit and was, therefore, a legitimate trial tactic.

Furthermore, such stipulation had the effect of focusing the trial on the remaining disputed elements and the State's only witness. Indeed, at trial, McKenzie's attorney put that legal strategy into effect, cross-examining the State's witness and presenting cogent closing argument in seeking to persuade the jury that the State had not carried its burden of proof as to those remaining undisputed elements. This, too, was a legitimate trial tactic.

From this record, we can conceive that McKenzie's counsel's decision to stipulate to the undisputed facts and to do so as set forth in the stipulation was, for multiple reasons, a legitimate tactical decision. Therefore, McKenzie fails to establish that there was no legitimate trial tactic underlying his legal counsel's decision to stipulate to the facts in question. Thus, McKenzie fails to carry his burden of showing that his legal counsel's performance was deficient. Accordingly, because he has failed to make one of his two necessary showings on appeal, McKenzie's ineffective assistance of counsel claim fails.

C

We also reject McKenzie's assertion that his legal counsel's performance was deficient for additional reasons, independent of the preceding analysis, as set forth below.

1

To reiterate, a defendant bears the burden of establishing deficient representation on appeal. Hatfield, 191 Wn. App. at 401. The burden of establishing deficient representation requires reference to the record established in the proceedings below. McFarland, 127 Wn.2d at 335.

"Deficient performance is not shown by matters that go to trial strategy or tactics." Hendrickson, 129 Wn.2d at 77-78 (citing State v. Garrett, 124 Wn.2d 504, 520, 881 P.2d 185 (1994); State v. Mak, 105 Wn.2d 692, 718 P.2d 407 (1986)). Therefore, a defendant bears the burden of showing "in the record the absence of legitimate strategic or tactical reasons supporting the challenged conduct by counsel." McFarland, 127 Wn.2d at 336.

"A stipulation as to facts may represent a tactical decision." State v. Mierz, 127 Wn.2d 460, 476, 901 P.2d 286 (1995). Accordingly, in challenging a stipulation to facts, a defendant must show, as evidenced by the trial court record, the absence of legitimate strategic or tactical reasons supporting such stipulation.

McKenzie fails to carry his burden of showing in the record that no legitimate strategic or tactical reason supported his counsel's stipulation. McKenzie does not support his argument by identifying, with reference to the trial

court record, whether the stipulation in question was offered by the State or offered by his counsel, whether stipulated facts were proposed, accepted, or rejected by either party, and, if so, which facts were so negotiated.  Given that absence, McKenzie fails to carry his burden of establishing his deficient representation claim with reference to the record in this matter.   Because he fails to make such a showing with regard to deficient representation, his claim of ineffective assistance of counsel fails.  Strickland, 466 U.S. at 687; Hendrickson, 129 Wn.2d at 78.

2

Additionally, even if we were to accept McKenzie's contention that Old Chief and Johnson controlled the extent to which his counsel could compel the State to accept a stipulation, McKenzie would nevertheless fail to establish that his counsel's performance was deficient in agreeing to the stipulation presented to the trial court herein.

Again, "the presumption of adequate representation is not overcome if there is any '*conceivable* legitimate tactic' that can explain counsel's performance."  Hatfield, 191 Wn. App. at 402 (emphasis added) (quoting Reichenbach, 153 Wn.2d at 130).

To reiterate, in Old Chief, the Court held that the prosecutor was required to accept a defendant's offer to stipulate to a general "felon" status for the purpose of a felon-in-possession charge because the evidentiary value of that stipulation carried "evidentiary value at least equivalent to what the Government's own evidence carried."  519 U.S. at 186.  Similarly, in Johnson, Division Two of

22

this court held that the State, in proving its charged offense of unlawful possession of a firearm, was required to accept a defendant's offer to stipulate to having been convicted of a "serious offense" because "the probative value of the conviction, as compared to the stipulation, was negligible." 90 Wn. App. at 62-63.

As set forth herein, the charged crime at issue was class B felony failure to register as a sex offender. The applicable statute reads as follows: "A person commits the crime of failure to register as a sex offender if the person has a duty to register under RCW 9A.44.130 for a felony sex offense and knowingly fails to comply with any of the requirements of RCW 9A.44.130." RCW 9A.44.132(1). Again, that provision requires proof of a defendant's conviction of a felony sex offense, that such felony sex offense imposed on the defendant a duty to register as a sex offender, and that such a duty was in effect during the time period for which the defendant was charged.

Accordingly, assuming for the purpose of this section that, pursuant to Old Chief and Johnson, McKenzie's legal counsel could have compelled the State to accept a stipulation containing those general facts, such a stipulation would have the effect of informing the jury that McKenzie had been convicted of a felony sex offense without specifying the particular crime of conviction.

In such a circumstance, we can conceive of a legitimate strategic or tactical reason for McKenzie's counsel to decide against offering such a general stipulation and to, instead, agree to stipulate to the particular names of the felony sex offenses for which his client had been convicted. It is conceivable that an

effective counsel could recognize that, if a jury were presented with the general fact that a defendant had committed a felony sex offense, such a statement might cause the jury to wonder which specific felony sex offense the defendant had committed, to the defendant's detriment. Indeed, our legislature has recognized many felony sex offenses that a jury might consider more severe than the attempted indecent liberties and child rape in the third degree felony sex offenses for which McKenzie has been convicted.[6] Given that, it appears to us a legitimate trial tactic to offer to stipulate to the particular crimes of conviction.

Therefore, McKenzie, for this reason as well, fails to establish an absence of legitimate strategic reasoning underlying his legal counsel's stipulation in this matter. Thus, McKenzie does not establish that his counsel's performance was deficient. Again, because he fails to make such a showing with regard to deficient representation, his claim of ineffective assistance of counsel fails. Strickland, 466 U.S. at 687; Hendrickson, 129 Wn.2d at 78.

---

[6] These felony sex offenses include those identified in chapter 9A.44 RCW, sex offenses. RCW 9.94A.030(47)(a)(i); see, e.g., RCW 9A.44.040, .050-.055 (rape in the first, second, and third degree); RCW 9A.44.073-.076 (rape of a child in the first and second degree); RCW 9A.44.083-.089 (child molestation in the first, second, and third degree); RCW 9A.44.093-.096 (sexual misconduct with a minor in the first and second degree); RCW 9A.44.100 (indecent liberties); RCW 9A.44.105 (sexually violating human remains); RCW 9A.44.115 (voyeurism in the first degree). These felony sex offenses also include those identified in RCW 9A.64.020 (incest in the second and first degree). RCW 9.94A.030(47)(a)(ii). These felony sex offenses further include certain of those offenses set forth in chapter 9.68A RCW, regarding sexual exploitation of children. RCW 9.94A.030(47)(a)(iii); see, e.g., RCW 9.68A.050 (dealing in depictions of minor engaged in sexually explicit conduct); RCW 9.68A.070(1) (possession of depictions of a minor engaged in sexually explicit conduct in the first and second degree); RCW 9.68A.075(1) (viewing depictions of a minor engaged in sexually explicit conduct in the first degree); RCW 9.68A.100 (commercial sexual abuse of a minor); RCW 9.68A.101 (promoting commercial sexual abuse of a minor). Finally, these felony sex offenses also include "[a] felony that is, under chapter 9A.28 RCW, a criminal attempt, criminal solicitation, or criminal conspiracy to commit such crimes." RCW 9.94A.030(47)(a)(iv).

D

Though not necessary to our disposition of this case given McKenzie's failure to establish deficient performance, we also consider whether McKenzie has carried his burden of establishing that, but for his legal counsel's stipulation to his felony conviction history, the result of his jury trial would have been different. McKenzie has not done so.

1

In order to establish prejudice arising from an alleged deficiency in counsel's performance, a defendant has the burden to show that "'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" State v. Thomas, 109 Wn.2d 222, 226, 743 P.2d 816 (1987) (quoting Strickland, 466 U.S. at 694); see also McFarland, 127 Wn.2d at 337. A defendant carries this burden when we must conclude that such errors undermined our confidence in the outcome of the trial. Thomas, 109 Wn.2d at 226 (quoting Strickland, 466 U.S. at 694).

McKenzie has not established that there is a reasonable probability that, but for his attorney's stipulation to his felony conviction history, the jury verdict would have changed. As an initial matter, the record reflects that McKenzie, independent of his legal counsel, voluntarily and knowingly agreed to waive his right to have the State establish the facts of his criminal conviction history as part of the charged crime. The record further reflects that he voluntarily and knowingly stipulated to the facts of his criminal conviction history, both in the stipulation document and in pretrial colloquy with the trial court.

McKenzie does not present argument or authority in support of the proposition that he would not have accepted the stipulation absent his counsel's advice. Therefore, because McKenzie himself agreed to the challenged stipulation as both evidenced by his signature on the waiver and stipulation document and by his colloquy with the trial court, he does not establish a reasonable probability that, absent his counsel's stipulation, the outcome of the trial would have changed.

Moreover, as a general matter, there was nothing particularly inflammatory or unfairly prejudicial about the wording set forth in the stipulation. The stipulation did not describe the factual basis of McKenzie's prior convictions. Furthermore, the stipulation to the dates on which he committed and was convicted of the felony offenses in question and to the county cause numbers under which he was prosecuted for those convictions were not inflammatory or unduly prejudicial to him. Nor does McKenzie in his appellate briefing attempt to argue as much. Therefore, such information was not more likely to stimulate an emotional, rather than a rational, decision from the jury, affecting the jury's verdict.

2

McKenzie next somewhat vaguely contends that his legal counsel's stipulation to his felony conviction history affected the outcome of the trial because, according to McKenzie, the jury could improperly rely on such convictions as evidence that he has a propensity to commit the charged felony sex offense of failure to register as a sex offender. This contention fails.

First, with regard to his conviction for rape of a child in the third degree, the facts constituting the elements of a knowing failure to register as a sex offender are substantially distinct from those constituting rape of a child in the third degree. Therefore, McKenzie's assertion that the jury could rely on his prior rape of a child conviction to conclude that he had a propensity to not register as a sex offender fails.

Moreover, if McKenzie was asserting that the jury might have improperly relied on his two prior convictions for failing to register as a sex offender as propensity evidence, he would also not prevail on such an assertion. The jury was twice admonished to not consider his convictions for any purpose other than to establish the criminal conviction history of the charged offense—first, when the court clerk read the parties' stipulation aloud during the State's case in chief and second, when the court issued its instructions to the jury. Jurors are presumed to follow the court's instructions. Weber, 99 Wn.2d at 166. McKenzie does not present persuasive evidence establishing that any member of the jury failed to do so.

3

McKenzie next contends that he was prejudiced by his attorney's stipulation in question because potential jurors during voir dire before trial expressed their disdain for individuals who have been previously convicted of rape of a child. For several reasons, McKenzie's claim is unavailing.

As an initial matter, the challenged stipulation was not read aloud until *after* the jury had been seated and trial had begun. McKenzie does not establish

how his legal counsel's stipulation after voir dire materially affected the voir dire or the potential pool of jurors. Moreover, of the seven potential jury members who, during voir dire, initially stated that they had distain for individuals with a prior rape of a child conviction, six were excused before trial. The remaining potential juror, who eventually became part of the jury for McKenzie's trial, later indicated that, despite his earlier reservations, he would be able to follow the court's instructions, including that he must be a fair and impartial juror, that McKenzie had a presumption of innocence, and that the State had the burden of proving the charged offense beyond a reasonable doubt. McKenzie does not present further citation to the record in support of his claim of juror bias. Thus, McKenzie's contention fails.

Given all of that, McKenzie has not established that there is a reasonable probability that, but for his counsel's stipulation to certain facts of his conviction history, the jury's verdict would have been different. Thomas, 109 Wn.2d at 226. Therefore, McKenzie has not carried his burden of establishing that his counsel's alleged error unfairly prejudiced him. Accordingly, McKenzie has failed to establish either of the necessary predicates for him to be entitled to appellate relief on his ineffective assistance of counsel claim.

III

McKenzie next challenges the sentencing court's imposition of a certain community custody condition and a $500 VPA against him. We discuss each in turn.

A

McKenzie first asserts that the sentencing court erred by imposing against him a community custody provision ordering him to "not unlawfully possess controlled substances while on community custody." This was error, McKenzie contends, because a sentencing court cannot impose a discretionary community custody condition unrelated to the crime of conviction and because the foregoing community custody condition was discretionary and unrelated to his conviction for failure to register as a sex offender.

The State, in response, concedes that the foregoing community custody provision may be stricken because its imposition is discretionary and must, therefore, be crime-related to be imposed and because "there is no evidence that McKenzie's crime in this case was related to possession of controlled substances." Br. of Resp't at 19-20.

We accept the State's concession.[7]

B

McKenzie next asserts that we should remand this matter to the sentencing court to strike the $500 VPA imposed against him. This is so, McKenzie contends, because he was found indigent by the court at the time of

---

[7] McKenzie's briefing only challenges the community custody provision discussed above, ordering that he "not unlawfully possess controlled substances while on community custody." Br. of Appellant at 19. Therefore, although we note that the State provides argument and analysis in support of not striking the community custody provision ordering McKenzie to "not consume controlled substances, including marijuana, except pursuant to lawfully issued prescriptions/ authorization," we need not consider the State's additional argument and analysis in this regard. Br. of Resp't at 20.

sentencing and because his case was on direct appeal when the amendment took effect.

The State does not dispute that the sentencing court found that McKenzie was indigent at sentencing and that remanding this matter to the court to strike the VPA based on that finding would be appropriate.

We accept the State's concession. See State v. Ellis, 27 Wn. App. 2d 1, 16, 530 P.3d 1048 (2023).

IV

McKenzie filed a pro se statement of additional grounds for our review pursuant to RAP 10.10. There, McKenzie urges us to declare that our state's regulatory scheme of sex offender registration is unconstitutional under the Fourth and Fifth Amendments to the United States Constitution. We should so declare, he contends, because the legislative mandate requiring an individual convicted of certain sex offenses to register as a sex offender constitutes an unreasonable seizure under the Fourth Amendment and violates the privilege against self-incrimination of the Fifth Amendment. McKenzie's contention fails.

The Fourth Amendment's ban on unreasonable searches and seizures applies to certain government interaction with individuals in the course of a criminal investigation. Florida v. Bostick, 501 U.S. 429, 434, 111 S. Ct. 2382, 115 L. Ed. 2d 389 (1991); California v. Hodari D., 499 U.S. 621, 628, 111 S. Ct. 1547, 113 L. Ed. 2d 690 (1991); Terry v. Ohio, 392 U.S. 1, 9, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968). The Fifth Amendment's privilege against self-incrimination protects individuals in the course of certain criminal investigations and criminal

proceedings initiated by the government. Miranda v. Arizona, 384 U.S. 436, 460, 467, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966); Malloy v. Hogan, 378 U.S. 1, 7-8, 84 S. Ct. 1489, 12 L. Ed. 2d 653 (1964); Carnley v. Cochran, 369 U.S. 506, 513, 82 S. Ct. 884, 8 L. Ed. 2d 70 (1962).

McKenzie seeks to extend the protection offered by these amendments to the statutory framework of RCW 9A.44.130, the sex offender registration statute, and asks that we rule that this statute is unconstitutional pursuant to the foregoing federal constitutional provisions. We decline his request.

The statutory process applicable to an individual required to register as a sex offender is not a criminal investigation nor is it a criminal proceeding. Rather, RCW 9A.44.130 sets forth a statutory mandate applicable to an individual who has pleaded guilty to—or been convicted beyond a reasonable doubt of—having committed a qualifying sex offense. These are events occurring after any underlying criminal investigation and criminal proceedings leading up to such a plea or conviction have come to a close. McKenzie does not present cogent argument or authority in support of extending such constitutional protections to the postconviction statutory process set forth in RCW 9A.44.130. Thus, McKenzie's statement of additional grounds fails to establish an entitlement to appellate relief.

We affirm McKenzie's conviction. We remand for the sentencing court to strike from McKenzie's sentence the VPA and the community custody condition ordering him to "not unlawfully possess controlled substances while on community custody."

Affirmed in part, reversed in part, and remanded.

Dwyer, J.

WE CONCUR:

Díaz, J.

Hazelrigg, A.C.J.